# THE STATE v. MELVIN WEBB, Appellant.

**In Banc, February 9, 1916.**

1. **FELONIOUS ASSAULT: Wounding With Fists.** Under section 4483, Revised Statutes 1909, which is the maiming or wounding statute, it is not necessary to prove malice or that the assault was made and the wounds inflicted with a dangerous weapon. All that is required is that the infliction of the wounds or great bodily harm be under circumstances which do not render it excusable or justifiable, and which would constitute murder or manslaughter if death had ensued. The wounding and maiming may be done with the fists, and to support the charge it is not necessary to establish that the wounds were of a dangerous character, or such as are likely to produce death.

   *Held*, by FARIS, J., dissenting, with whom WOODSON, C. J., and GRAVES, J., concur, that it is essential that an information drawn under Sec. 4483, R. S. 1909, aver the circumstances themselves which, if death had ensued, would have made the offense manslaughter, and that not having been done it is unnecessary to rule whether said statute can be violated by an assault with fists, or by the fists aided adventitiously by a finger ring.

   *Held*, also, that if it be true, as announced by the majority opinion, that it is not necessary to establish that the wounds inflicted were of a dangerous character or such as are likely to produce death, it logically follows that any wound is, under said statute, sufficient to constitute felonious assault, and thereby the boundary line between common and felonious assault has been wiped out.

   *Held*, also, that said section 4483 denounces but two crimes: 1, The endangering of the life of another; and 2, The infliction of great bodily harm, either by (a) wounding, (b) maiming, or (c) disfiguring.

2. ———: ———: **Information.** Under said statute it is not necessary to allege the particular means by which the wounding or maiming was done, since this may be accomplished by any means.

3. ———: ———: ———. **Proof.** An assault may be charged to have been committed by different means, and proof of any will sustain the charge,

4. ———: ———: **Evidence of Provocation.** The court did not err in withdrawing from the jury's consideration testimony to the effect that the prosecuting witness, a school teacher, some hours before the assault with fists, had chastised defendant's son. That chastisement was neither a defense to nor in mitigation of the charge of felonious assault under Sec. 4483, R. S. 1909, where the wounding and maiming did not result in death.

5. ———: ———: **Instruction: Presumption: Intention to Kill: Harmless.** Evidence that defendant, wearing a heavy finger ring on one finger, struck the prosecuting witness with his fists, knocked him to a hard road, severely beat him on the head and over his eyes and ears and other parts of the body where great and permanent bodily injuries could have been easily afflicted, was sufficient to authorize an instruction telling the jury that "the law presumes that a person intends the natural and probable consequences of his acts," and that if they believe from the evidence the defendant assaulted the prosecuting witness "in a manner likely to cause death or great bodily harm, the law presumes that he intended to kill him or to do him some great bodily harm." It is not required that a deadly weapon be used in order to justify such an instruction. *Held*, also, that, as this instruction was probably given more particularly in connection with the first count, which charged an assault with intent to kill or do great bodily harm, and defendant was acquitted on that count, and the second count charged wounding and maiming on which alone he was convicted, and nothing appearing to indicate that the severe injuries were not intentionally inflicted, he cannot complain of the instruction.

*Held*, by FARIS, J., dissenting with whom WOODSON, C. J., and GRAVES, J., concur, that the human fist, even when aided by a finger ring, is not judicially noticed as being a deadly weapon, and therefore the words of the instruction telling the jury that "the law presumes that a person intends the natural and probable consequences of his acts" were erroneous, since, under such circumstances, the law does not presume that death or great bodily harm is a natural or probable consequence.

Appeal from Audrian Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

266Mo.43

*Fry & Rodgers* and *Pearson & Pearson* for appellant.

(1) The verdict was against the law and the evidence. There was no felony committed. There was no felonious assault made, or proven. (a) As shown by the testimony of the prosecuting witness, Tugel, and the two State witnesses, who saw the assault, Tugel was not struck with anything, except the fist of the defendant; and not in such a manner as to cause any apprehension in their minds, at the time, that Webb had any intention to kill, or do great bodily harm; or, that the natural and probable result of such blows, would likely cause death or great bodily harm. The charge, in the second count of the information, that the defendant made an assault, "with a certain large finger ring" was not proven, nor attempted to be proven. It is a fact, "known to all persons of ordinary intelligence," that one man cannot make an assault upon another, with his fist, in a manner likely to cause death or great bodily harm—except, perhaps, in very extreme cases. Rogers v. State, 60 Ark. 76, 31 L. R. A. 468. This assault was nothing more than an ordinary assault with the fist. The jury should not have been left to guess, or presume, as they were by instruction seven, that the assault was made in a manner likely to produce death, or cause great bodily harm; and that the defendant was presumed to know, that an ordinary lick, or a number of them, with his fist, on any part of a man's head or body, was likely to cause death, or great bodily harm; and therefore, was guilty of a felony. State v. Harris, 209 Mo. 439; State v. Dunn, 221 Mo. 541. (b) All the text-writers and cases treat an assault with the fist simply as a misdemeanor. Rogers v. State, 60 Ark. 76; State v. Sayman, 103 Mo. App. 142; State v. Shawley, 42 Mo. App. 585. (2) The court erred in giving instruction three

on the part of the State. The verdict found "the defendant guilty of felonious assault, as charged in count two, of the information." (a) The instruction is broader than the information. It does not confine the jury to finding an assault made with a certain large finger ring, and with hands and fists; but, is a roving instruction, giving the jury the right, if they saw fit, to find that the assault, if any, was made with a sledge hammer, a hatchet, a large stick of wood, a knife, or any other dangerous, or deadly weapon, or instrument. In a civil action, such a variance between the allegations of the petition, and an instruction, would be reversible error. The principle is just as pertinent in a criminal proceeding. Reading v. Railroad, 165 Mo. App. 130; Davidson v. Transit Co., 211 Mo. 320; Beave v. Transit Co., 212 Mo., 331; Miller v. Railroad Co., 155 Mo. App. 528; State v. Harris, 209 Mo. 438. (b) There is no evidence upon which to base an instruction for a felonious assault in this record. The evidence shows, that the defendant assaulted, or struck prosecuting witness, with his fist, nothing more. The jury had none of the marks, bruises, or cuts, alleged to have been made by the assault, shown to them, which is necessary to be shown, before they can find a felonious assault. State v. Drumm, 156 Mo. 220. And this too, notwithstanding the charge in the information, that defendant did greatly maim, wound and disfigure which is the bodily harm charged to have been inflicted, and necessarily must have proven to have been inflicted, in order to convict of a felony. The evidence showed that there were absolutely no marks, or scars, on the head or body of the prosecuting witness, showing any evidence, or result of the assault. State v. Drumm, 156 Mo. 219; Rogers v. State, 60 Ark. 76, 31 L. R. A. 468. (3) The court erred in giving the seventh instruction on the part of the State. There was no evidence

from which the jury could find that the defendant assaulted Mr. Tugel, in a manner likely to cause death or great bodily harm. And, he was not, and there was no proof that he was, greatly maimed, wounded or disfigured. Therefore, there was no evidence upon which to base this instruction. The glaring fact, that the actual assault with the fist, did not cause death, or great bodily harm, refutes the presumption that defendant intended to kill Tugel, or do him great bodily harm. The natural and probable consequences of an actual assault with the fist are the actual consequences thereof; and, it was error for the court to instruct the jury, that the law presumed the defendant intended to kill Tugel, or to do him great bodily harm, when, as a matter of fact, his assault upon him only inflicted some minor bruises and a skin scratch. Rogers v. State, 31 L. R. A. 468. It is only where an assault is made with a deadly weapon, or aimed at a known vital part of the head, or body, of a person, that the court is justified in declaring, that the law presumes that a man intended to kill another, or to do him some great bodily harm. State v. Harris, 209 Mo. 439; State v. Ruck, 194 Mo. 430. Unless the court is justified in declaring, as a matter of law, that the natural and probable consequences of an assault of one man upon another, with his fists, is likely to cause death, or great bodily harm, it is not justified in declaring that, the law presumes that he intended to kill him, or do him great bodily harm, by such assault. Similar instructions to this seventh are found in the law books, but they are only given when the assault is made with a deadly weapon, or aimed directly at some vital part of the head or body. State v. Taber, 95 Mo. 591; State v. Musick, 101 Mo. 270; State v. McKenzie, 102 Mo. 630; State v. Grant, 152 Mo. 64; State v. Harris, 209 Mo. 432, 439; State v. Stubblefield, 239 Mo. 530. This seventh instruction is almost, a peremptory in-

struction to the jury, that the natural and probable consequences of the acts of a man who assaults another with his fists, is death, or great bodily harm; and, that in so doing, the law presumes that he intended to kill him, or do him great bodily harm.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) The second count of the information charges felonious assault under Sec. 4483, R. S. 1909, and is in a form approved by this court. State v. Bailey, 21 Mo. 484; State v. Moore, 65 Mo. 606; State v. Nieuhaus, 217 Mo. 332; State v. Janke, 238 Mo. 378. (2) It has been held that Sec. 4483, R. S. 1909, does not require that the wounding should have been done with a deadly weapon. State v. Janke, 258 Mo. 382; State v. Nieuhaus, 217 Mo. 548; State v. Bailey, 21 Mo. 484; State v. Munson, 76 Mo. 109. The evidence does disclose that the appellant wore, at the time of the assault a large ring with three sets in it, and after the assault, the appellant remarked in the presence of Miss Tully that his hands and finger were sore and he would have to get the ring off. The evidence for the State further showed that Tugel's face had been cut and bruised in about twenty places and that at the time of the trial, the hearing of Tugel was still defective on account of the bruises he had received on his ear. This is called to the court's attention for the reason that in appellant's brief, it is stated that the charge that the defendant made an assault with a certain large ring was not proven nor attempted to be proven. The evidence clearly shows that this appellant gave Tugel about as severe a beating as could be given with the fists and a ring as described in the evidence in the length of time that the assault was continued. The cases cited by the appellant are not in point. (3) The State's instruction number three

properly states the law under Sec. 4483, R. S. 1909. There is no requirement under the statute that the instruction should state that the assault was committed by a deadly weapon or any particular weapon. It is only required that the party be wounded and receive great bodily harm and under circumstances which would constitute murder or manslaughter if death had ensued. State v. Janke, 238 Mo. 382; State v. Nieuhaus, 217 Mo. 348; State v. Ruck, 194 Mo. 430; State v. Munsey, 76 Mo. 109; State v. Bailey, 21 Mo. 484; Kelly's Crim. Law & Proc. (3 Ed.) 581. A reading of the evidence will show that the facts were sufficient to warrant an instruction on felonious assault. Kelly's Crim. Law & Proc. (3 Ed.), sec. 296; 8 Am. & Eng. Ency. Law, 286; 12 Cyc. 152. (4) The giving of State's instruction number seven on presumption of the intent was proper. A criminal intent is generally inferred from the commission of the unlawful act. State v. Schloss, 93 Mo. 361; State v. Hall, 85 Mo. 66; State v. Davis, 226 Mo. 493; State v. Sylvia, 130 Mo. 440; State v. Ruck, 194 Mo. 431; State v. Kempf, 26 Mo. 430.

REVELLE, J.—Prosecution by information filed in the circuit court of Audrain County, charging felonious assault upon D. E. Tugel. Trial, verdict of guilty, assessment of punishment at fine of $200; appeal in regular form.

Evidence on the part of the State: The assaulted was at the time of the difficulty superintendent of public schools at Vandalia, in Audrain County, Missouri, and defendant was an inhabitant of that town, having a son who attended the school over which prosecuting witness exercised superintendence. From record *indicia* it seems that the prosecuting witness had, in the morning prior to this assault, administered some punishment to the son of defendant, and that, after the noon recess, and as prosecuting witness was returning

to the school, was accosted by defendant, who said: "I want to see you." When close enough defendant seized prosecuting witness by the coat and vest and asked him if he had slapped his boy. Upon receiving an affirmative reply defendant struck the prosecuting witness, who with two packages of books which he held attempted to ward off, and shield himself from defendant's blows. After being struck several times the prosecuting witness went to the ground, which is described as hard and dry and a road belabored with much traffic. Defendant then pounced upon and straddled the prosecuting witness and beat him over the head, striking him frequently in the eyes, ears and face. After prosecuting witness had twice stated in reply to defendant's two inquiries that if he had been wrong he would apologize to the son, defendant, either voluntarily, or because of the interference of others (the evidence is not clear), desisted from further assault. With the aid of others, the prosecuting witness was then placed on his feet and taken home, where an examination of his injuries disclosed the following: His eyes were bloody, bruised, sore and badly swollen, and he was unable to recognize the parties who had escorted him to his home. The lid of one eye was cut entirely through, and he was unable to use his right eye at all, with very little use of his left eye. The teeth on the right side of his jaw were loose, and the left side of his back, face and ear were bruised for considerable time thereafter. Even at the time of the trial his hearing was seriously affected. He felt unable for a week and a half after the assault to perform his regular duties, and for quite a while suffered from nervousness and pain. The evidence also discloses that defendant usually wore a heavy finger ring bedecked with sets, and that at the time of the assault this ring was on one of his fingers.

On the part of defendant the testimony tended to show that upon the return of his son from school at

the noon hour he was informed that the prosecuting witness had punished him in school, and that soon thereafter he encountered the prosecuting witness on the street and asked him "why he had beat his boy over the head," to which the prosecuting witness replied: "I am running that school." After some little conversation on this subject the prosecuting witness became angry and struck the defendant, whereupon a fistic fight ensued. Upon being told by the prosecuting witness that he would apologize for the punishment that he had administered to the son, the defendant voluntarily withdrew from the difficulty.

I. Instructions on both common and felonious assault were given, but defendant insists that there is

Felonious Assault.

no evidence upon which to predicate the instruction on felonious assault, or the verdict which convicts him of that offense. The facts are fully set out in the preceding statement and repetition would but encumber. In disposing of this and other assignments it must be borne in mind that the information is bottomed, the cause was submitted, and the verdict based upon section 4483, R. S. 1909, which is the maiming or wounding statute, and which prescribes a different and less offense than that defined by either section 4481 or 4482. Under this section it is neither necessary to charge or prove malice, or that the assault was made and the wounds inflicted with a dangerous weapon. All that is required is that the infliction of the wounds or great bodily harm be under circumstances which do not render it excusable or justifiable, and which would constitute murder or manslaughter if death had ensued. [State v. Bailey, 21 Mo. 484; State v. Nieuhaus, 217 Mo. l. c. 348; State v. Janke, 238 Mo. l. c. 382-3.] This assault was clearly committed, if the State's evidence be given credence, under circumstances which would have made it murder or manslaughter had death ensued, and this not-

withstanding that the wounding and maiming were done only with the fists. [State v. Hargraves, 188 Mo. 337, and cases supra.] That the prosecuting witness was wounded and received great bodily harm abundantly appears from the facts. [State v. Leonard, 22 Mo. 449; State v. Nieuhaus, 217 Mo. 1. c. 347.] To support this charge it is not necessary to establish that the wounds inflicted were of a dangerous character, or such as are likely to produce death. [State v. Agee, 68 Mo. 264; State v. Bailey, 21 Mo. 484; State v. Nieuhaus, 217 Mo. 1. c. 347; State v. Janke, 238 Mo. 378.] The evidence is sufficient to sustain the verdict and we cannot invade the jury's function.

II. Complaint is made of instruction number 3, because it did not confine the means by which the as-

**Instruction: Means of Assault.** sault was made to "a certain large finger ring and with hands and fists," which is the allegation in the information. In answer to this contention is suffices to say that, in the first place, it was not at all necessary to allege in the information the particular means by which the maiming and wounding were done as this may be accomplished by any means; and, in the second place, it is well settled that an assault may be charged to have been committed by different means, and proof of any will sustain the allegation. [State v. Nieuhaus, 217 Mo. 1. c. 344; State v. Hottman, 196 Mo. 110; State v. Myers, 198 Mo. 225.] Aside from this and if it be conceded that the instruction is somewhat broad, we do not believe, in view of the theories and evidence upon which this case was submitted and the other instructions given, that the defendant was thereby prejudiced. In fact, the main insistence of defendant here is that the means alleged in the information and by which the proof discloses the assault was made is of such a character that a felonious charge cannot be bot-

tomed thereon.   This assignment must be ruled adversely to defendant.

III.   It is also said that error was committed in withdrawing from the jury's consideration the record *indicia* that the prosecuting witness had, some hours prior to the assault, and as superintendent of schools, chastised defendant's son for some infraction of school rules.   It cannot be, and it is not, seriously contended that this could justify the assault.   In the first place had death ensued as a result of this assault, the fact of this chastisement would not have reduced the crime from murder to manslaughter, for it constituted no *lawful* provocation as distinguished from *just* provocation, which is necessary to reduce.   In fact, when we consider the time that had elapsed, and the conduct of defendant after he had learned of the chastisement and before he made the assault, it can hardly be said that the punishment administered to his son amounted to even just provocation had death ensued, but this is unimpórtant, for even had his provocation been sufficient to reduce from murder to manslaughter, in the event of death, it is neither a defense to nor in mitigation of this charge, because it is written that the offense is complete when committed ''in cases and under circumstances which would constitute *murder* or *manslaughter* if death had ensued.''   The most that can be said of this evidence is that it tended to establish an unlawful motive for the assault, and while it was insisted in argument that no person would commit murder or inflict great bodily harm because of this provocation, the records of this court and human experience establish the contrary.   [State v. Heath, 221 Mo. 565; State v. Heath, 237 Mo. 255.]   The exclusion or withdrawal of this evidence, if error, was error in defendant's favor, and of it he cannot complain.

**Provocation.**

IV. It is finally insisted that instruction number 7 should not have been given. This instruction is as follows:

"The court instructs the jury that the law presumes that a person intends the natural and probable consequences of his acts, and if you believe from the evidence in the case that defendant assaulted D. E. Tugel in a manner likely to cause death or great bodily harm, the law presumes that he intended to kill him or do him some great bodily harm."

Instruction: Probable Consequences of Assault.

No fault is found with its form, the complaint being that there was no evidence from which the jury could reasonably find that the defendant made the assault in a manner likely to cause death or great bodily harm. In this connection counsel for defendant say: "He was not and there was no proof that he was greatly maimed, wounded or disfigured. The glaring fact that the result of his fists did not cause death or great bodily harm refutes the presumption that defendant intended to kill or do great bodily harm." With this we cannot agree. The evidence discloses, as heretofore stated, that defendant assaulted the prosecuting witness, violently struck and severely beat him over the head, eyes, ears and other parts of the body where serious, great and permanent bodily injury could be easily inflicted. On one of his fingers he wore a heavy ring, and his statements after the difficulty disclose that he had used such force and violence as to injure his own finger and hand. Without going into detail as to the character of the injuries inflicted, it is sufficient to say that they constituted great bodily harm. Considering also the fact that at the time they were being inflicted the prosecuting witness's head was on hard, dry ground, it cannot be said that his acts did not warrant the conclusion that he intended to do great bodily harm. While it is true that this instruction is given generally in cases where a

deadly weapon is used, yet it is not because of the use of such a weapon that the instruction is proper; it is because the use of such a weapon is one fact tending to show his intention, but this does not mean that such an intention cannot be reasonably inferred from other facts and other means of attack. There is nothing whatever in this record to indicate that defendant did not intend to inflict the wounds which he did, nor is there anything to show that such were not the natural and ordinary consequences of his acts. It is our opinion that the evidence is sufficient to warrant the giving of this instruction. In this connection it might be further said that the information contained two counts, and that the State was entitled to have the law upon both counts fully declared. The first count charged assault with intent to kill, or do great bodily harm; while the second count, as heretofore stated, charged a wounding and maiming. This instruction was perhaps given more particularly in connection with the first count, on which defendant was acquitted, and to that extent he cannot complain. In view of the disclosures that the prosecuting witness was in point of fact severely injured, and nothing appearing to indicate that these injuries were not intentionally inflicted, it cannot be said that this instruction was prejudicial or improper.

We have reviewed the entire record in this case, and are of the opinion that the defendant has had a fair trial, and that the verdict is warranted by the evidence. The judgment is therefore affirmed.

PER CURIAM.—This cause having been transferred to Court in Banc from Division Two, on the dissent of *Faris, J.*, and having been reargued and submitted, the foregoing opinion of REVELLE, J., is adopted as the opinion of the court. *Bond, Walker* and *Blair, JJ.*, concur; *Woodson*, C. J., and *Graves* and *Faris, JJ.*, dissent. *Faris, J.*, dissents in separate

opinion in which *Woodson, C. J.,* and *Graves, J.,* concur.

FARIS, J. (dissenting)—I am unable to concur in the majority opinion herein for three reasons, which I briefly summarize thus:

First.    The doctrine announced in this case breaks down the distinction between a common assault and battery and a felonious assault, whereby maiming, wounding, disfiguring and great bodily harm ensues.

Second.    Instruction numbered seven under the facts here (the producing cause and nature of the battery regarded) is misleading, erroneous and harmful.

Third.    Instruction three is broader than the information, in that it fails to confine the jury in their consideration of the producing causes of the effects found to the causes pleaded in the information. I shall briefly set forth the reasons I have in mind for these views.

I premise what I shall say to the first objection by eliminating the question whether section 4483, under which this prosecution is had, can be violated by an assault with the fists, or by the fists aided adventitiously by a finger ring. It may well be legally possible under circumstances of great advantage taken, or of great disparity of size, or of age, or of physical condition, and of the exhibition by the accused of ferocious brutality in the infliction of the injuries, to eke out a violation of this statute with these weapons of nature. [5 C. J. 732.] But in such case the information ought to aptly charge the facts which go to distinguish such a battery from the ordinary battery. [Jennings v. State, 9 Mo. 852.] For it is said in that case that "It is essential in an indictment under the 35th section (now section 4483) to aver the circumstances themselves, which if death had ensued, would have made the offense man-

slaughter." This has not been done in this case; hence the question suggested is not before us, and we are relieved from the duty of ruling it.

I am impressed with the view that the majority opinion by its application of the definition of a wounding under said section 4483, and within the purview thereof, has not only trespassed upon the zone of demarcation which separates and distinguishes an ordinary assault and battery from the more serious and felonious assault and wounding, but has wiped out the boundary between the two utterly. Attend to the reasons for this view: The majority opinion says succinctly that within the purview of said section 4483, "it is not necessary to establish that the wounds inflicted were of a dangerous character, or such as are likely to produce death." From such view it would seem logically to follow that any wound is sufficient. A wound, says Cyc., is "an injury to the person by which the skin is broken." [40 Cyc. 2865.] So, the fault I find is that there are left no landmarks under the majority view in this case which point out the difference between one assault with the fists which constitutes a felony and another assault with the fists which constitutes but a mere misdemeanor.

The statute of this State defines by preclusion and denounces a common assault and battery thus: "Any person who shall assault, or beat or wound another, under such circumstances as not to constitute any other offense herein defined, shall," etc. [Sec. 4484, R. S. 1909.] Under a definition of a wounding as contained in the majority opinion, any breaking of the skin is a wounding within the purview of said section 4483, whether done by old or young, weak or strong, healthy or unhealthy, by a single blow of the fist, or by many such blows. Given a blow by which the skin is broken and blood flows ever so little, a felony has been committed, if a prosecuting attorney so wills; because, forsooth he who is struck might have fallen

(under circumstances not even required to presently exist), into a river, or over a cliff, or against a rock, or on the paved street, or upon a concrete gutter edge or other adventitious but convenient foreign substance, and death thereby follow. Thereby I fear the line separating a misdemeanor from a felony is destroyed. And one engaging in a fist fight becomes a felon, if mayhap he be *persona non grata* to the prosecuting attorney, in whose hands is thus placed the arbitrary power to make a felony of that which was before but a misdemeanor of the minor sort. I characterize such a misdemeanor as minor because of the well-known hot passions of men which impel them to resent an ill word with a swift blow.

Discussing the expression "great bodily injury," which confessedly is *in pari materia* with, but stronger than, the phrase "great bodily harm" of section 4483, of our statute, as well as another point important and germane to one phase of this case, the Supreme Court of Arkansas said:

"The phrase 'great bodily injury,' is difficult to define, for the reason that it well defines itself. It means a 'great bodily injury,' as distinguished from one that is slight or moderate, such as would ordinarily be inflicted by an assault and battery with the hand or fist without a weapon. To put one in danger of great bodily injury from an assault, something more than attack with the hand or fist would usually be required, and it would rarely happen that one might lawfully take the life of another to avoid an assault with the fist only. But cases might be supposed when it would be justifiable to do so; for an assault and battery by a powerful man with his fist upon a weak one might be carried to such extreme severity as to produce great bodily injury, and yet be unaccompanied by such circumstances as to make it a felony. One who intentionally commits a great bodily injury upon the person of another may or may not be guilty

of a felony, depending upon the circumstances; but, as such an injury may, under some circumstances, be committed, and still the offender not be guilty of a felony, it is therefore not accurate to define 'great bodily injury' as 'a felony committed on the person.'" [Rogers v. State, 60 Ark. 76, 31 L. R. A. l. c. 468.]

It is a significant fact, though concededly not a wholly decisive one, that in all the suggested forms for indictments found in the excellent local treatise of Judge KELLEY, *there is not one* but which connotes the use of some instrument or implement of attack of a deadly or dangerous nature. Of an indictment under section 4483, for the use of nature's weapons, there is no form given. [Kelley's Crim. Law & Pr., sec. 580.] Likewise is it significant that there has never before been in this State a case wherein a prosecution was had for a battery accruing from the use of mere fists. At least, a fairly exhaustive search for such a one has not been rewarded. These are the cases and the instrumentalities: State v. Leonard, 22 Mo. 449 (a large stone, said to have been a "deadly weapon"); Johnston v. State, 7 Mo. 183 (a stick of timber); Jennings v. State, 9 Mo. 852 (a large iron auger); State v. Freeman, 21 Mo. 481 (an iron shovel); State v. Bohannon, 21 Mo. 490 (a rock, and that maiming occurred in that a thumb was bitten off); State v. Thompson, 30 Mo. 470 (a hoe handle); State v. Moore, 65 Mo. 606 (a knife); State v. Agee, 68 Mo. 264 (a pistol); Carrico v. State, 11 Mo. 579 (a large piece of wood); State v. Bailey, 21 Mo. 484 (a large block of wood); State v. Davis, 29 Mo. 391 (a knife); State v. Janke, 238 Mo. 378 (by beating with fists, choking with the hands and stamping on and kicking with the booted foot and by striking with a hard but unknown weapon); State v. Nieuhaus, 217 Mo. 332 (a raw-hide whip three-fourths of an inch in diameter and a heated iron stove lifter, nine inches long, an inch thick and weighing one pound); State v. Munson, 76 Mo. 109 (a pistol); State

v. Van Zant, 71 Mo. 541 (a knife); State v. Vaughn, 164 Mo. 536 (a knife); State v. Havens, 95 Mo. 167 (a large, heavy stone); State v. McQuaig, 22 Mo. 319 (a knife); State v. Feaster, 25 Mo. 324 (a large stick); State v. Herreford, 29 Mo. 399 (a knife, *semble*); State v. Ray, 37 Mo. 365 (a knife).

Moreover, the majority opinion seems to treat section 4483 as if the fact of wounding by a mere breaking of the skin is the only prerequisite, and as if there were five offenses denounced by said section, viz., (a) *maiming*, (b) *wounding*, (c) *disfiguring*, (d) inflicting great bodily harm, and (e) acts endangering the life of another. On the contrary the three first words are obviously *ejusdem generis*, so they may all be charged in the conjunctive in the same count of a single indictment. If they are not *ejusdem generis*, and if they do denounce five separate and distinct crimes, then the information in the instant case, as well as all of the known and used forms of indictment under this section, have offended for duplicity (Kelley's Crim. Law & Pr., sec. 580; State v. Janke, supra; State v. Nieuhaus, supra; State v. Munson, supra; State v. Van Zant, supra; State v. Brown, 60 Mo. 141; State v. Moore, supra; State v. McQuaig, supra); and practically all, if not all, others cited supra, for *they charge in one count* two, three and more, often *four, of the alleged distinct crimes;* besides, it has been specifically held that such an indictment (i. e., an indictment charging a *wounding, disfiguring and the infliction of great bodily harm*) charges but one offense. [State v. Herreford, supra.] That there is one case wherein the contrary is held in an *obiter dictum,* after an ample reason for the holding there was apparent and was given, does not alter this view. The conclusion therefore is inevitable that the wounding connoted by said section 4483 is a maiming-and-disfiguring, wounding, from which great bodily harm ensues, and

266Mo.44

not a mere breaking of the epidermis and a feeble flow of blood superinduced by a blow from the fist in an ordinary battery.

Comprehensively examined it is fairly manifest that section 4483 is a statutory "catch-all," designed to cover and forbid criminal acts, productive of hurt and harm to others where life was put in jeopardy whether such acts were done with or without malice; that is, whether done intentionally or by culpable negligence. Thus it was designed to supplement, and not to supplant other germane statutes, wherein the strict letter, for lack of specific averment, fell short of defining the acts which constitute the offenses aimed at in section 4483. It not only includes acts which in other jurisdictions are designated as "aggravated assaults," but also other acts, done with imputable but not express, malice, with or without an assault. It is not necessary under this section that there should be any actual injury, if the life of another be intentionally endangered (State v. Agee, 68 Mo. 264); nor that life be actually endangered if there be a wounding and disfiguring to the extent of inflicting, or from which great bodily harm ensues (State v. Nieuhaus, 217 Mo. 332); or obviously if there be a maiming, *or* a wounding, *or* a disfiguring *from which* great bodily harm ensues; provided, the circumstances are such that if death had occurred the tortfeasor would for his acts have been guilty of either murder or manslaughter. It is clear that an intentional assault whereby life is endangered, or whereby great bodily harm ensues is already fully covered by sections 4481 and 4482; that an intentional assault which produces a maiming or disfiguring in designated serious aspects, is likewise forbidden by section 4480, while a common assault and battery is covered by section 4485. But it is not so clear that assaults with deadly or dangerous instrumentalities resulting in wounding, maiming or disfiguring from which bodily harm, greater in degree than

a common battery, but lesser in degree than those denounced in sections 4482 and 4480 and lacking. the specific purpose and malice of section 4481, are so included. It is clear that acts of culpable negligence, where injuries short of death are inflicted, are denounced by said section 4483; that the endangering of life intentionally, and that the infliction of. great bodily harm either by wounding, or maiming, or disfiguring are also included. So the conclusion is deducible that the section denounces but two crimes: (a) the endangering of the life of another and (b) the infliction of great bodily harm, either by (1) wounding, (2) maiming, or (3) disfiguring. Any other view inevitably leads to the conclusion that the Legislature has done the unnecessary thing of making a single act punishable under more than one statute and of making two separate and distinct crimes out of the same act.

I am not contending that under the ''aggravated assault'' features of said section 4483 it is impossible to offend by an intentional battery committed with the bare fists. I am conceding, as in the beginning I forecast, the possibility of doing this under a proper information, present proper facts. But I do contend that there is neither such a pleading nor such facts here, and that absent such necessary concomitants, the ancient landmarks ought not lightly to be destroyed, merely because the acts of the defendant happen to be unusually reprehensible and the punishment richly merited.

But I pass to the second reason for my dissent, viz., the goodness *vel non* in a case like this of instruction seven, which reads thus:

Instruction 7.

''The court instructs the jury that *the law presumes that a person intends the natural and probable consequences of his acts,* and if you believe from the evidence in the case that defendant assaulted D. E. Tugel in a manner likely to cause death or great bodily

harm, the law presumes that he intended to kill him or do him some great bodily harm.''

Here nothing was used but the fists, one of which bore a finger ring. Neither the fists nor the ring will be judicially noticed to be either a deadly or dangerous weapon as such is known to the law, absent specific proof of the fact. But in such state of the facts the jury are told that ''*the law presumes that a person intends the natural and probable consequences of his acts.*'' It has been said that in a criminal case the law raises no such presumption. [State v. Stewart, 29 Mo. 419, wherein the instrument of assault was a walking-stick.] In this case Judge NAPTON said: ''But the instruction in reference to the intent of the defendant was calculated to mislead. The intent of the defendant in making the assault was a question of fact for the jury. The law raises no presumption about it, and it was error for the court to tell the jury that 'the law presumes that every man intends the natural, necessary, and probable consequence of his acts.' ''

I do not contend that in a proper case the giving of a proper instruction involving the presumption of intent from the use of a deadly weapon upon a vital part of the body of him who is assaulted, is forbidden by law. But that is not the question here. The human fist, even when aided by a finger ring, is not judicially noticed as being a deadly weapon (Little v. State, 61 Tex. Crim. App. 197), and therefore its use could not be judicially noticed (and presumptions are necessarily bottomed on judicial notice), as being followed by the inevitable consequence of death or great bodily harm, for such consequences are neither the natural nor the probable *sequelae* of such use of the fist as it is ordinarily used in a battery. Such consequences are but remote possibilities, because in human experience they occasionally happen; they do not always happen; and we repeat, if the fist or the manner of the use thereof in this case was such as to take it out

of the category of ordinary use in a common assault and battery, the information ought to have said so. Moreover, if the jury were, even in this case to be told anything about presumptions, this instruction omitting the part which I am especially criticising, and which I italicise, told them all they were allowed to be told. The view urged in the majority opinion is fully met when the objectionable italicised words are entirely cut out of it. In short, these words were mere hurtful surplusage, even if we concede, for the sake of the argument, the correctness of the view on this point, of the majority opinion. Of course this instruction had specific reference to the first count, and not to the second count, on which the conviction was had, and which has been said to be a lesser offense. Though mindful of the excusing· rule on this phase, I do not think it saved this error from being hurtful here, because it applied generally to the facts in the case, and was not a mere erroneous definition of a greater crime, than that of which defendant was convicted.

Coming to the third objection: Instruction three is bad because it is broader than the information. It **Instruction 3.** would be bad in a civil case. How much worse then is it in a criminal case, wherein we are enjoined that, since the punishment of the citizen inflicts both pain and stain, rules of law in criminal cases are to be construed strictly. The pertinent part of the count in the information on which the conviction rests, charged that defendant "with a certain large finger ring and with his hands and fists, the said D. E. Tugel did then and there, beat, bruise and wound in and upon the head, neck and body of him the said D. E. Tugel, whereby the said D. E. Tugel was then and there greatly maimed, wounded and disfigured, and received great bodily harm."

The instruction which I contend is bad for a too-great broadness, in pertinent phrase read thus: "The court instructs the jury that if you find and believe

from the evidence that defendant, at the county of Audrain and State of Missouri, within three years next before the filing of this information in this cause did unlawfully and feloniously assault D. E. Tugel and did then and there strike and beat said Tugel in a manner likely to produce death or great bodily harm, and did then and there inflict on said Tugel great bodily harm, then you will find the defendant guilty as charged in the second count of the information in this cause and you will assess his punishment," etc.

If it be urged that this widening of the issues was harmless because of lack of evidence of other sources of injury besides the fists and the ring of defendant, the answer is that there is more than a suggestion in the evidence that the hardness of the ground on which Tugel lay contributed to some extent to the injuries which he is said to have sustained. This the majority opinion concedes, *arguendo;* yet the information did not charge it.

For these reasons and others which might be set forth but for the lack of space, I dissent from the majority opinion and the conclusion therein reached. *Woodson, C. J.,* and *Graves, J.,* concur in these views.