## THE STATE v. RAINEY CRUTS, Appellant.

Division Two, May 26, 1921.

1. **ASSAULT WITH INTENT TO KILL: Instruction for Less Offense.** Where the defendant was proceeded against by information under Section 3262, Revised Statutes 1919, charging him with feloniously shooting another with a pistol loaded with powder and ball with intent to kill and murder him and the evidence for the State supported the charge while the evidence for defendant tended to show that he acted solely in self-defense, it was not error for the trial court, after instructing the jury on the theory of the State and also on self-defense, to refuse to give an instruction asked by

defendant as to a lower grade of assault, as it was authorized to do, in a proper case, by Section 3693, Revised Statutes 1919.

2. ————: **Defense of Brother.** Where the defendant and his brother were proceeded against by information, under Section 3262, Revised Statutes 1919, for a felonious assault with intent to kill another by shooting him with a pistol loaded with powder and ball, and a severance was granted the defendants and the State elected to try this defendant first, it was not error for the trial court to refuse to instruct the jury as to defendant's right to defend his brother, where there was no evidence that the person shot was assaulting the brother when shot by the defendant, but defendant claimed that he shot because such other person was attacking defendant himself.

3. ————: **Evidence: Res Gestae.** In a proceeding by information under Section 3262, Revised Statutes 1919, against defendant and his brother for a felonious assault by shooting with intent to kill another, where a severance had been granted the defendants, and, upon the trial of this defendant, it appeared that he and his brother and the person named in the information as shot and his three sons were all present at the time and place of the difficulty and that one of the sons was shot by defendant's brother, it was proper for the trial court to admit in evidence as *res gestae* everything that occurred at that time and place, inasmuch as the conversation, acts and proceedings between the parties were so interwoven as to prevent a single, continuous and inseparable transaction.

4. ————: **Instructions: Comment on Evidence.** An instruction which is a comment on a portion of the evidence is properly refused.

5. ————: ————: **Covered by Instructions Given.** An instruction is properly refused where the court has correctly declared the law in another instruction given the jury, which covers the question embraced in the instruction refused.

Appeal from Maries Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*Lovts & Breuer* and *Holmes & Holmes* for appellant.

(1) In a prosecution under Section 3262, R. S. 1919, ● defendant may be convicted of an assault without malice,

and the jury should be so instructed if the evidence warrants it. (a) Under the evidence in this case the court under proper instructions, should have left to the jury to say whether the assault was done with malice aforethought, or with intent to kill or do some great bodily harm without malice aforethought. Sec. 3693, R. S. 1919; State v. Harris, 209 Mo. 440; State v. Stubblefield, 239 Mo. 526; State v. Grant, 144 Mo. 67; State v. Swearengin, 269 Mo. 189. (b) From the use of a deadly weapon by defendant malice may be presumed, but not conclusively so. Even that presumption is a disputable one, and if the contrary is made to appear, the question of malice should be submitted to the jury. State v. Stubblefield, 239 Mo. 531; State v. Kelly, 73 Mo. 613; State v. Music, 101 Mo. 270. (c) It is only where no effort is made to ,overcome such prima-facie case of malice that the court may rightfully refuse to submit that issue to the jury. State v. Schloss, 93 Mo. 361. (d) Defendant testified that in shooting at prosecuting witness Bailey he aimed at his legs, because he did not want or intend to kill him. If true, he acted without malice. The court, therefore, should have instructed on assault without malice. State v. Palmer, 88 Mo. 572; State v. Banks, 73 Mo. 592; State v. Stubblefield, 239 Mo. 526; State v. Murphy, 14 Mo. App. 73; Pattison, Instruction in Criminal Cases, sec. 381. (2) Under the law a man not only has the right to shoot another in the necessary defense of himself, but has the same right in defense of his brother, and the jury should be so instructed where the evidence warrants it. Sec. 3233, R. S. 1919; State v. Turner, 152 S. W. 313. (3) It was error for the court to admit as a part of the *res gestae,* evidence as to the act of Dan Cruts (brother of defendant) in shooting at John Bailey (son of prosecuting witness) and to refuse, by proper instruction, to withdraw such evidence from the consideration of the jury in determining defendant's guilt. State v. Proten, 43 S. E. 230; St. Clair v. United States, 154 U. S. 134; 7 Words & Phrases, 6135; Eagon v. Eagon, 60 Kan. 697; Commonwealth v. Trefethen, 31 N. E. 960. ·

*Jesse W. Barrett,* Attorney-General, and *Robert J. Smith,* Assistant Attorney-General, for respondent.

(1)   The evidence in this case did not warrant instruction that the appellant might have been convicted of an assault without malice.   In a prosecution of this kind where it shows the defendant either acted with malice aforethought or in self-defense, instructions should not be given for a lower grade of assault.   State v. Schloss, 93 Mo. 361;   State v. Robb, 90 Mo. 30;   State v. Doyle, 107 Mo. 36;   State v. McGuire, 113 Mo. 675;   State v. Curtner, 262 Mo. 218.   (2)   The instructions upon self-defense were proper.   The evidence does not show that the prosecuting witness attempted to assault appellant's brother.   Therefore, the court did not err in refusing to instruct upon the question of defending his brother.   (3)   The acts and conduct of Dan Cruts, brother of appellant, were a part of the *res gestæ* and the court did not err in admitting the testimony as to his acts. State v. Katz, 266 Mo. 493; State v. Vaughn, 200 Mo. 1; State v. Cavin, 199 Mo. 154; State v. Woodward, 191 Mo. 633.

RAILEY, C.—On May 10, 1920, the Prosecuting Attorney of Maries County, Missouri, filed, in the circuit court of said county, a verified information, charging that defendants, Rainey Cruts and D. W. Cruts, on April 14, 1920, in said county, did feloniously shoot one D. W. Bailey, with pistols loaded with powder and ball, in his abdomen and right leg, with the intent to kill and murder him, etc.   Said defendants asked, and the court granted, a severance.   Thereupon, the State elected to go to trial in the case of State against Rainey Cruts first.   The latter entered a plea of not guilty and his trial was commenced before a jury on November 8, 1920.

Statement.

It appears from the evidence, that defendants are brothers, and that D. W. Bailey, mentioned in the information, is their uncle.   The latter, on April 14, 1920,

owned 160 acres of unimproved land, lying *north* of the farm of Rainey Cruts, and *east* of land owned by D. W. Cruts. D. W. Bailey, and three of his sons, who were then living with him, on the afternoon of April 14, 1920, went to the west side of said 160 acres, and burned the grass and leaves east of the east side of D. W. Cruts' land. They had finished that part of the work, had gone to the south side of said 160 acres, north of the land belonging to Rainey Cruts, and were burning east on the Bailey land, when Rainey Cruts saw the smoke, and telephoned his brother Dan. The latter was in the field at work, and his wife and Mrs. Cook, communicated to him the telephone message from Rainey. Shortly afterwards Rainey put his pistol in his pocket, and went out into the field where Dan was at work. After some conversation, Dan went to his own home, put a pistol in his pocket, and returned to where Rainey and the women were. The two men then walked on over to where Bailey and his sons were burning the trash, and the two women *claimed* to have followed along, forty to fifty steps in the rear, but did not come clear up to where Bailey and his boys were located. Rainey says he had a fork, which he left at a point some distance from where Bailey and sons were at work. As the main controversy, relates to what occurred when the two Cruts boys came up to where Bailey and his three boys were, we have deemed it best to set out the substance of the testimony, as given by the eye witnesses.

   *Dan W. Bailey testified, that no part of the fire reached the fence of either of the Cruts;* that at one place, the fire got up within a foot or two of Rainey's fence, but they put that fire out and started to *continue* burning where they had left off; put out the above fire, Just about this time, the defendants appeared on the land of Rainey, on the opposite side of the fence from Bailey's. Dan Bailey then describes what occurred, in substance, as follows: That Rainey Cruts said, "We come over here to see about this fire": that he seemed to be awfully mad; that he said to Rainey, "You needn't mind

about that, Rainey. We will take care of the fire. We don't aim for the fire to get out"; that Rainey said, "That is all right; just so it don't get into the fence;" *that just then Dan Cruts commenced accusing John Bailey, his son, of attempting to hit him with the fork;* that Dan Cruts then said, "Don't hit me with that fork. Don't hit me with that fork": that these remarks were addressed to John Bailey; that Dan Cruts then grabbed a rock, threw it at John, and it hit the top rail of the fence; *and just at that time both defendants commenced* shooting; they got the guns from out of their pockets; that just as soon as Dan Cruts threw the rock, he put his hand in his pocket, and then just as Rainey threw his gun on witness, Dan Cruts threw his gun on John Bailey; *that John Bailey was doing nothing when Dan Cruts said: "Don't hit me with that fork", that John was just standing there with the fork on his shoulders* that Dan Cruts shot John Bailey in the right arm. Witness, who had been formerly judge of the county court, testified as follows:

"Mr. Hutchison: Now, go ahead, Judge, and tell what happened. When the shooting commenced what did you do, if anything? A. I didn't do a thing. The first —when they first throwed their guns down on me I didn't think they would shoot, and the first shot Rainey Cruts shot he shot me in the abdomen; the second shot he shot me in the leg; and Dan Cruts, the third shot that he shot hit John's arm, and the fork just fell off his shoulder, back of his shoulder, and his arm just fell down by his side, and he just turned around and around. Dan Cruts turned then on to me and shot two shots at me, and Rainey Cruts shot two shots at my head. The first two shots—the first shot was in my abdomen, and the next shot in my leg, and the next two shots he held the gun or aimed right on my head—he aimed to hold his gun on my head.

"Q. Did the last two shots Rainey Cruts fired— did they hit you? A. There was two shots hit my hat and I felt one strike one of my ears.

"Q. What did you say, if anything, during that time? A. I didn't say a word. . . .

"Q. How long was it from the time they were throwing the rock and the shots were fired? How long a time elapsed? A. Just immediately. Just as quick as he throwed the rock they both went to shooting at the same time—right then.

"Q. How fast were the shots fired? A. Just as fast as they could make their pistols revolve.

"Q. From where you were standing at the time they came up, did you advance towards them after they stopped? A. No, sir.

"Q. Did you draw the fork on them you had in your hand? A. No, sir.

"Q. Did you attempt to stick the fork in Rainey Cruts? A. No, sir.

"Q. Did you walk up to the fence and put your foot on the fence? A. No, sir.

"Q. Did you see your son advance toward Dan Cruts? A. No, sir, he never advanced a bit.

"Q. He never advanced a bit? A. No, sir.

"Q. Did he take the pitchfork off his shoulder? A. No, sir, he had the pitchfork on his shoulder when the third shot was fired.

"Q. And then what became of it? A. It just fell backwards over his back and his arm fell down by his side and he just turned around and around."

Witness testified, that the fence was rotted down, and was about three or three and half feet high; *that he never at any time got on the same side of the fence with Rainey and Dan Cruts;* that he was about 16 feet from Rainey when the shots were fired, and that he was never any closer to him; that one of the shots struck him above the right knee.

There was some other testimony of witnesses, as to threats and swearing of both defendants after the shooting was over. The testimony of John Bailey, Oscar Bailey and Rolla Bailey, who were with their father at the time the above transactions occurred, is practically

the same as that of D. W. Bailey. The doctors testified in substance, that one of the pistol balls struck Dan W. Bailey in the abdomen and lodged against his hip bone.

*Mrs. Dan W. Cruts and Mrs. Cook,* both testified in substance, that they were forty-five or fifty steps away when the shooting commenced; that they saw Dan W. Bailey and John Bailey, with their pitchforks, advancing towards defendants like they were going to jab them; that John Bailey was after Dan Cruts and old man Bailey was after Rainey Cruts; that Rainey fired the first shot, and they then turned back home and saw nothing more of the shooting.

*Rainey Cruts,* the defendant, testified in substance, that after he and his brother spoke to Dan Bailey, and they exchanged some words about the fire, Dan Bailey then said, "What are you fellows looking for?" and was mad; that defendant then said to him, "I don't care for you burning it just so you don't get in the fence"; that about that time, Dan Bailey took a chew of tobacco, and *"kinda"* nodded his head, and the boys reached on their shoulders for their forks; that John started at Dan and said, "G—d—you," and Dan Cruts said, "Now, stand back John," two or three times, and finally reached over to pick up a rock, and John *"kinda"* stopped; that he (witness) reached over and tapped his brother on the arm and told him not to do that, and his brother Dan dropped the rock; *that about the time witness says he got straightened up and turned his head, his uncle Dan Bailey was right at his face almost with a fork;* that he would take a little stroke at witness and then gouge; that he hit defendant, jabbed him on the arm and produced a knot there as large as an egg. Defendant further testified as follows:

"So he just got right across on me. Well, I didn't want to kill him and the first shot I intended to shoot him in the leg, and he just kept coming and I just went

to shooting wherever I could shoot, and the last shot, the last time he gouged the fork clear past my head and when he did I just jammed the gun right down on his head; I don't suppose the gun was over that far from his head. When I done that he went back to the back of the fence row just as fast as he come across and throwed his fork down and that settled it.''

*Dan W. Cruts* corroborates his brother Rainey, as to what occurred at time and place of shooting.

Several witnesses testified that *defendant* had the reputation of being a peaceable, quiet and law-abiding citizen. Some of the witnesses testified that the general reputation of *Dan W. Bailey,* for truth and veracity was not good, and that he had the reputation of being a quarrelsome, turbulent man. Witnesses were likewise introduced as to the good character of Dan Bailey for truth and veracity, and they testified that he had the reputation of being a peaceable, quiet man.

After the instructions were read to the jury, the latter returned into court the following verdict:

''We, the jury, find the defendant, Rainey Cruts, guilty, as charged in the information, and assess his punishment at imprisonment in the penitentiary for the term of two years.''

Defendant, in due time, filed motions for a new trial, and in arrest of judgment. Both motions were overruled, and the cause duly appealed by him to this court.

I.   Under proposition one of appellant's ''Points and Authorities,'' it is asserted that:

''In a prosecution under Section 3262, R. S. 1919, defendant may be convicted of an assault without malice, and the jury should be so instructed if the evidence warrants it.''

Section 3262 supra, reads as follows:

''Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or

force likely to produce death or great
bodily harm, with intent to kill, maim,
ravish or rob such person, or in the at-
tempt to commit any burglary or other
felony, or in resisting the execution of
legal process, shall be punished by im-
prisonment in the penitentiary not less than two years.''

**Assault With
Intent to Kill:
Ins⁺ uction for
Assault Without
Malice.**

It is appellant's contention, that he was entitled to
an instruction, under the evidence, by virtue of Section
3693, R. S. 1919, leaving it to the jury to determine
whether the assault was committed with malice afore-
thought, or with intent to kill, or do some great bodily
harm, without malice aforethought.  Said Section 3693,
R. S. 1919, reads as follows:

''Upon an indictment for an assault with intent to
commit a felony, or for a felonious assault, the defendant
may be convicted of a less offense; and in all other cases,
whether prosecuted by indictment, information or before
a justice of the peace, the jury or court trying the case
may find the defendant not guilty of the offense as
charged, and find him guilty of any offense, the com-
mission of which is necessarily included in that charged
against him.''

Several authorities are cited by defendant in support
of above contention.  We are not disposed to criticise the
cases cited, when applied to the facts referred to there-
in.  In construing the two sections of our Statute above
quoted, we should keep in mind the *particular* facts of
each case coming before us.  It may be conceded, for the
purposes of the case, that *instances* may arise under
said sections, in which it would be proper to submit to
the jury the question as to whether defendant might be
convicted for a lower offense than that called for in
Section 3262 supra but in each case, the *facts* must be
*sufficient* to warrant the court in submitting said issue
to the jury.

If the evidence in behalf of the State be taken as true,
defendant Rainey Cruts, armed himself with a loaded

pistol and went to the scene of trouble, where Dan W. Bailey and his three sons were at work on their own premises, engaged in the legitimate business of burning trash thereon. When defendant and his brother approached the division fence, the State's evidence shows, that all of the Baileys were standing from ten to fifteen feet from the fence, with their respective forks on their shoulders; that they *remained* in that condition, and made no effort to advance on defendant and his brother, or to harm either of them; that defendant, thereupon, pulled his pistol, and without any provocation, shot Dan Bailey once in the right leg above the knee, once in the abdomen, and fired two more shots, which went through his hat. On the other hand, defendant testified, that he put his hand on his brother, told him not to throw the rock at John and, as he turned his head, Dan W. Bailey was almost at his face with the pitchfork, with which he commenced hitting and gouging defendant, without any justification or excuse therefor. He testified, that on the *first* shot, he *intended* to shoot his uncle Dan in the leg, as he did not want to kill him, *but his uncle "kept coming and I just went to shooting wherever I could shoot,. and the last shot, the last time he gouged the fork clear past my head and when he did I just jammed the gun right down on his head."* On the State's theory, was defendant guilty of a *murderous assault* on his uncle, without provocation, with a loaded pistol, *or* did he shoot Dan Bailey, in self defense? Both theories were submitted to the jury under appropriate instructions, and a verdict returned to the effect, that defendant intentionally shot his uncle without provocation.

The *physical facts* in this case, speak louder than words. It is undisputed, that defendant shot Dan Bailey in his right leg above the knee; that he shot him in the abdomen, tried to shoot him in the head, and only missed the latter by a small margin, as two holes were shot through his uncle's hat. The plea of *self-defense* having been eliminated by the verdict of the jury, it left the case with

defendant having shot his uncle, as disclosed by the physical facts, without either justification or excuse. Taking the physical facts, in connection with the remaining testimony in the case, we are of the opinion, that the trial court committed no error in refusing to instruct as to a lower grade of assault. [State v. Feeler, 226 S. W. l. c. 17-18; State v. Ray, 225 S. W. l. c. 973; State v. Foster, 220 S. W. l. c. 960-1; State v. Jones, 217 S. W. 22-3; State v. Burns, 278 Mo. l. c. 449, 213 S. W. l. c. 117; State v. Wansong, 271 Mo. l. c. 56-7-8; 195 S. W. 999; State v. Webb, 266 Mo. 672, 182 S. W. 975, State v. Webb, 205 S. W. l. c. 190; State v. Curtner, 262 Mo. l. c. 218; State v. Maguire, 113 Mo. l. c. 675; State v. Doyle, 107 Mo. l. c. 43-4.

II. Appellant's second contention is that:

"Under the law a man not only has the right to shoot another in the necessary defense of himself, but has the same right in defense of his brother, and the jury should be so instructed where the evidence warrants it." [Sec. 3233, R. S. 1919; State v. Turner, 246 Mo. 598.]

We have no disposition to controvert the above proposition, where the facts in the case justify the defendant in affording his brother protection. The above principle law, however, has no application to the ——: Defense of Brother. facts in this case. Defendants were granted a severance, and the case of State v. Rainey Cruts, is the only one pending here for our consideration. It is not claimed, by either the State or defendant, that the *latter* shot any one but Dan W. Bailey. Appellant is on trial here for shooting his uncle, and not for shooting some other person, while the latter was assaulting his brother. *It is not claimed, that Dan W. Bailey was assaulting defendant's brother when he was shot by appellant.* On the contrary, the *latter* testified, as heretofore shown, that he shot Dan Bailey, because he claimed the *latter* was hitting and jabbing *him* with a pitchfork.

The above contention is without merit and overruled.

III.　Defendant's third contention reads as follows:

"It was error for the Court to admit as a part of the *res gestae,* evidence as to the act of Dan Cruts (brother of defendant) in shooting at John Bailey (son of prosecuting witness) and to refuse, by proper instruction, to withdraw such evidence from the consideration of the jury in determining defendant's guilt."

——: Res Gestae.

The court admitted as *res gestae,* everything that occurred from the time defendant and his brother came into the presence of Dan W. Bailey, and his three sons, until the shooting was over, and the two Cruts boys left. The conversation, acts and proceedings between said parties, under the circumstances aforesaid, were so interwoven as to present a single, continuous and inseparable transaction. The facts *present* a typical case, involving the doctrine of *res gestae.* [State v. Pfeifer, 267 Mo. 1. c. 28-9, 183 S. W. 337; State v. Katz, 266 Mo. 1. c. 502-3; State v. Anderson, 252 Mo. 1. c. 98-9; State v. Vaughan, 200 Mo. 1; State v. Cavin, 199 Mo. 154; State v. Woodward, 191 Mo. 1. c. 633; 10 Ruling Case Law, sec. 157, p. 974.]

The Missouri cases supra, conclusively sustain the trial court in holding, that the entire transaction which took place at the time of the shooting was a part of the *res gestae* to be considered by the jury in passing upon the case.

IV.　Defendant's instruction "A" was properly refused, because it was a comment on a *portion* of the testimony. [State v. Adkins, 225 S. W. 981; Jones v. Ry. Co., 228 S. W. 1. c. 784, and cases cited.] It was likewise properly refused, because instruction 4, given by the court, correctly declared the law, and covered the question complained of by appellant. [State v. Hilsabeck, 132 Mo. 1. c. 358.]

——: Instruction Refused: Comment on Evidence.

V. We have examined all the matters complained of by appellant, and find no error in the record of which he can legally complain. The case was carefully tried by court and counsel, and the verdict is fully sustained by substantial evidence.

The judgment below is accordingly affirmed. *White* and *Mosley*, CC., concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.