# CITY OF ST. LOUIS v. AUGUST SCHEER, Appellant.

**In Banc, July 1, 1911.**

1. **ORDINANCE: Conflict With Statute: Milk Solids: . Different Standards.**  So long as an ordinance, within the grant of municipal power, falls within the State statute on the same subject (that is, does not exceed it,.or is not inconsistent with it), there is no conflict in the sense of making the ordinance void.  Where the statute sets up a standard for milk of 8.75 per cent of solids not fat, an ordinance which requires milk to contain not less than 8.5 per cent of non-fatty solids is not in conflict therewith.  The lower municipal standard is not an authorization to sell in violation of the State law; it is merely prohibitive in character.  The city may carve out a lesser offense and remain passive as to the rest of its legislative power on the subject-matter.

2. ———: ———: ———: ———: **Contrary to State Policy.**  It is the policy of the State to permit a city to exercise its municipal discretion in passing ordinances differing in terms and limits from statutes, so long as those limits are not broader than and inconsistent with statutory provisions.  An ordinance

235 Sup.—46

St. Louis v. Scheer.

fixing the standard for milk solids at 8.5 per cent is not in conflict with the policy of the State as evidenced by a statute fixing that standard at 8.75 per cent of milk solids.

3. ——: ——: ——: ——: **Discrimination Against Rest of State.** An ordinance which requires all milk sold within the city to come up to a certain standard, while a statute requires a higher standard, does not discriminate against the inhabitants of the city and in favor of non-residents, in permitting the sale of inferior milk in the city which cannot be sold elsewhere in the State. Nor does it discriminate in favor of milk dealers who sell in the city as against dealers who sell milk outside.

4. ——: **Fixing Standard for Milk.** A city may prescribe a scientific standard indicative of the nutritive contents of milk, and may forbid the sale of milk which, through fault of cow or dealer, does not come up to that standard.

5. ——: **Repeal by Statute.** Where there is no express repeal of an ordinance by statute, there can be no repeal by implication except where there is a conflict.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Benjamin J. Klene*, Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* and *E. F. Stone* for appellant.

(1) Ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit are uniformly declared null and void. Howlett v. Camp, 115 Ala. 499, is directly in point, as it passes upon the question that an ordinance can not permit or authorize that to be done which the statute forbids, especially when the Constitution of the State provides that the municipal corporation shall have no power to pass any ordinance inconsistent with the general laws of the State. State v. Caldwell, 3 La. Ann. 435; Flood v. State, 19 Tex. App. 584; Bohney v. State, 21 Tex. App. 597; Lynn v. State, 33 Tex. Cr. R. 153; Fay v. State, 71 S. W. 603; In re Desanta, 96 Pac. 1027; State v. Caldwell, 3 La. Ann. 435; New York v. Nichols, 4 Hills, 209; In re Ridenbaugh, 49 Pac. 12; Ex parte Solomon, 91 Cal. 440: Thompson v. Carroll.

22 How. 422; Ex parte Hoffman, 99 Pac. 519. In the case at bar, the ordinance, Sec. 501, fixes the standard for milk at: butter-fat not less than 3 per cent, non-fatty solids not less than 8.5 per cent, and ash not less than .7 per cent. This standard is in conflict with the standard fixed by the act of the Legislature, Laws 1909, p. 116, which fixed the standard for the whole State at 3.25 per cent butter-fat and 8.75 per cent non-fatty solids. Defendant is charged with selling milk containing less than 8.5 non-fatty solids, being one of the elements of the standard of the ordinance. Defendant now insists that said element of the ordinance is in conflict and inconsistent with said general law of the State, and hence null and void. (2) The State has manifested a policy by a general enactment of the legislature relative to the quality and sale of dairy products. The State (Laws 1909, p. 118) having done so, "the city of St. Louis is restricted to the exercise of only such jurisdiction as is consistent with and in harmony with that policy of the State so manifested." Said act expressly fixes standards for milk and cream and commands that they shall apply to, and be for, the entire State. This general law certainly expresses the policy of the State, "is applicable to every citizen of the State and its force and vitality can not be limited by municipal authority." Ordinances must harmonize with the policy of the State. From the acts of the Legislature the public policy of the State is determined, for by them it is created and declared. Canton v. Nist, 9 O. St. 439; Thompson v. Mt. Vernon, 11 O. St. 688; Collins v. Hatch, 18 O. St. 53; Durango v. Reinsley, 16 Colo. 327; Phillips v. Denver, 19 Colo. 179; Theobald v. Lodge, 59 Mo. App. 91; Dillon, Munic. Corp. (4 Ed.), sec. 329; Baxter v. Tripp, 12 R. I. 310; U. S. v. Assn., 166 U. S. 290. (3) As between said ordinance and the statute, the ordinance is void, because it operates to discriminate in favor of the residents of the city of St. Louis who produce, sell and distribute milk in

said city and against non-residents thereof who produce said products and sell or offer them for sale within the city. The non-resident could not produce and sell them with 8.75 per cent non-fatty solids, as required by the State law, in competition with the resident selling under the ordinance with only 8.50 non-fatty solids. An ordinance is void which discriminates between residents and non-residents. Hayden v. Noyes, 5 Conn. 391; Borough v. Phillips, 148 Pa. St. 482; Walton v. Missouri, 91 U. S. 275; Darnell v. Memphis, 208 U. S. 123; State v. North, 27 Mo. 464; Fechheimer v. Louisville, 84 Ky. 306; State v. Browning, 62 Mo. 591. A law professing to be non-discriminating on its face may, from the circumstances, and in its application, be held to be really discriminating, and hence unconstitutional. Brimmer v. Behman, 138 U. S. 78; Minnesota v. Barber, 136 U. S. 313; Fertilizer Co. v. Board, 43 Fed. 613; Cooley, Const. Lims. 479; Grapty v. Rushville, 107 Ind. 502. (4)   Sec. 501 is void, because it is absolutely prohibitive upon the sale of milk unless it contains not less than a certain percentage of certain constituents, especially non-fatty solids, regardless of whether it is wholesome or unwholesome, or adulterated or unadulterated. Sec. 501 does not go to the wholesomeness or healthfulness of the product, but simply condemns and prohibits the sale, unless it comes up to a specified percentage of solids. It is not a regulation in the interest of health, but a prohibition. Righers v. Atlanta, 66 S. E. 991. To say that no one shall sell milk containing less than 8.5 non-fatty solids is unreasonable, especially where the city's power to pass it rests upon an implied power, as in this case, for the city of St. Louis has no express power to enact standards for milk.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

The Act of 1909 in so far as it defines milk standards is not an effective law, because it does not require conformity to these standards or provide a penalty for non-conformity thereto. Laws 1907, p. 116, sec. 9; 1 Blackst. Com., pp. 43, 44, 57; State ex inf. v. Railway, 146 Mo. 168; Bishop on Stat. Crimes (3 Ed.), sec. 22; 1 Bishop, Crim. Law (8 Ed.), sec. 6. The standards prescribed by ordinance are less restrictive than those of the Act of 1909, and there is, therefore, no conflict. St. Louis v. Klausmeier, 213 Mo. 127. The Klausmeier case should not be overruled because it is sustained by abundant authority. St. Louis v. Cafferata, 24 Mo. 94; Independence v. Moore, 32 Mo. 392; State v. Harper, 58 Mo. 530; State v. Wister, 62 Mo. 592; Ex parte Holwedell, 74 Mo. 395; St. Louis v. Schoenbusch, 95 Mo. 518; State ex rel. v. Walbridge, 119 Mo. 383; State v. Gustin, 152 Mo. 108; Hill v. St. Louis, 159 Mo. 167; State v. Muir, 164 Mo. 610; Canton v. McDanie, 188 Mo. 207; St. Louis v. De Lassus, 205 Mo. 578; St. Louis v. Liessing, 190 Mo. 64; St. Louis v. Dairy, 190 Mo. 492; St. Louis v. Dairy, 190 Mo. 567; St. Louis v. Reuter, 190 Mo. 594; St. Louis v. Polinsky, 190 Mo. 516; St. Louis v. Schuler, 190 Mo. 524; St. Louis v. Bippin, 201 Mo. 528. The city of St. Louis can by ordinance prohibit acts which are also prohibited by statute, provided such ordinances are within its charter power, and not in conflict with the statute. State ex rel. v. Walbridge, 119 Mo. 383; Canton v. McDanie, 188 Mo. 207; St. Louis v. Schoenbusch, 95 Mo. 618; St. Louis v. Cafferata, 24 Mo. 94; St. Louis v. De Lassus, 205 Mo. 578; Kansas City v. Bacon, 147 Mo. 259.

LAMM, J.—Defendant was charged, and, offering no evidence on his own behalf, was found guilty of violating section 501 of the municipal code of St. Louis

and fined $25. From that conviction he appeals to this court.

The charge is that on the 30th day of July, 1909, at Sidney street and Indiana avenue, in the city of St. Louis, he did carry and have in his possession and expose for sale milk having on analysis less than 8.5 per cent non-fatty solids, to-wit, 7.91 per cent—said non-fatty solids being estimated by the difference between the total solids determined by evaporation and the butter fat determined gravimetrically by the Adams paper-coil process.

The ordinance reads:

"Sec. 501. No milk shall be sold, kept, offered or exposed for sale, stored, exchanged, transported, conveyed, carried or delivered, or with such intent as aforesaid be in the care, custody, control or possession of any one, unless it shows on analysis not less than three per cent by weight of butter-fat, eight and five-tenths per cent solids not fat, and seven-tenths of one per cent ash, of which fifty per cent shall be insoluble in hot water. Provided, however, that in contested analyses of milk condemned, under this article, butter-fat shall be estimated gravimetrically by the Adams paper-coil process; total solids by evaporation, and non-fatty solids by difference between total solids and butter fat, and ash by weighing the residue after incineration of total solids at a dull-red heat until all the organic matter is destroyed. Any one violating any of the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars for each and every offense."

The facts: A city milk inspector on the date and at the place alleged took a sample of milk from defendant's wagon. The city chemist, Moody, analyzed it, testifying that it contained less than 8.5 per cent non-fatty solids, viz., 7.91 per cent, and that he estimated non-fatty solids by the difference between the total

solids determined by evaporation and the butter-fat determined gravimetrically by the Adams paper-coil process. The city then offered in evidence section 501, supra, and rested.

Such motions were filed and overruled and exceptions saved below as properly bring here the only question for decision, viz.:

Is section 501, supra, void?

In a brief showing marked industry in research, the ordinance is attacked from several angles. We pass to the consideration of material propositions advanced, taking them to be:

*First.* The ordinance is void because in conflict with the milk standard fixed by the act of the General Assembly. [Laws 1909, p. 116.]

*Second.* Void because running counter to the policy of the State as evidenced by said act regulating the sale of dairy products.

*Third.* Void because it discriminates against non-residents of St. Louis and in favor of residents thereof.

*Fourth.* Void because passed without regard to the wholesomeness or adulteration of milk, in that it absolutely prohibits its sale unless it comes up to an arbitrary standard of percentage in non-fatty solids.

*Fifth.* Void because "repealed by an act of the Legislature of the State." [Laws 1909, pp. 116-7.]

Of the foregoing propositions in the order named.

I. Is the ordinance void because in conflict with the statute?

In 1909 the General Assembly enacted a law (Laws of 1909, p. 116, section 9), so far as material here, reading:

"For the purposes of this act, the following definitions and standards of purity for dairy products are hereby established:

"1. Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more

healthy cows, properly fed and kept, . . . and contains not less than eight and three-fourths per cent (8.75) of solids not fat, and not less than three and one-quarter (3.25) per cent of milk fat. . . ."

Said section 9 of the act is now section 639, Revised Statutes 1909.

Attending to that statute the first proposition of counsel is at once disclosed to be that the statutory standard requires milk to contain not less than 8.75 per cent of solids not fat, while the ordinance, supra, sets up a standard for municipal purposes of only 8.5 per cent of solids not fat. The ordinance varies from the statute by falling within and below it, not in exceeding it. Hence, counsel say, the conflict and the invalidity of the ordinance.

As to which we say: If the contention was new and open in this jurisdiction it would be entitled to fresh and full exposition. But it is neither new nor open. Whatever the rule elsewhere, in Missouri the doctrine is firmly established that so long as an ordinance, within the grant of municipal legislative power, falls within (that is, does not exceed, or is not inconsistent with) the State statute there is no conflict or inconsistency in the sense making the ordinance void. Contra, if it goes beyond the limits of the municipal grant of power, if it is in excess of the standard and limitations of the statute, if it add provisions prohibited by the statute, it is in conflict therewith in the sense making the ordinance void. For the voice of the State law-maker, evidenced by his laws passed within constitutional bounds in the exercise of the police power, is the voice of the overlord and as such is paramount to that of the municipal law-maker's. Therefore, there must be such substantial conformity in the latter to the public policy evidenced by the former as makes the one not inconsistent with the other. [Sec. 9582, R. S. 1909.]

City of St. Louis v. Klausmeier, 213 Mo. 119, in Banc, was ruled unanimously by a bench of six judges.

In that case the point now up was in judgment. It was held, in effect, that a lower municipal standard for milk was not in the nature of an *authorization* to sell in violation of the State law. It was merely prohibitory in character. It did not invite or permit a violation of the statute. It was the mere exercise of a proper municipal discretion not to bring the machinery of city courts and city laws into operation to prosecute for violations in excess of the municipal standard. By so doing, the State is left to enforce its own law at all points and to the full limit—the city electing to remain passive when the violation falls between the municipal standard on one side and the State standard on the other. "If a person," says WOODSON, J. (who spoke for this court in the Klausmeier case, p. 129), "sells dairy products in the city of St. Louis which come up to the standard of strength and purity fixed by the State, then he would be guilty of no offense either under the State law or the ordinances of the city; but if he should sell such products which do not come up to that standard, then he would be liable to punishment under the State law and not under the ordinance, unless the standard of strength and purity thereof should also fall below the standard prescribed by the city ordinance; in which event he would be liable to prosecution and punishment under both."

The philosophy of the matter is illustrated in many cases cited by our learned brother. Take an example or two:

In St. Louis v. DeLassus, 205 Mo. 578, it was ruled that an ordinance punishing the sale of meat after 9 o'clock in the forenoon of Sunday was not inconsistent or in conflict with the State statute, prohibiting the sale of goods, wares and merchandise on Sunday—*i. e.*, an ordinance did not become void from the mere fact that it was not as broad as the statute. It was also ruled (pp. 584-5) that an ordinance could provide its own limits of punishment, and, by that token, could pre-

scribe a greater fine than the statute. All of which
means that the city may carve out a lesser offense and
remain passive as to the rest and residue of its legisla-
tive power on the subject-matter.

In Canton v. McDaniel, 188 Mo. 1. c. 228, it was
ruled, following abundant authority, that a conviction
under a city ordinance could not be pleaded in bar of a
State prosecution, or *vice versa.* The reason underlying
that pronouncement obviously connects itself on one
side with the reason of the rule that a city ordinance
need not be as broad as a State statute.

The right of St. Louis to establish a milk standard
is not an open question. It has that right under its
charter and its delegation of police power. [St. Louis v.
Liessing, 190 Mo. 1. c. 480, *et seq.*; St. Louis v. Bippen,
201 Mo. 528.]

If the Klausmeier case is to be followed, it is con-
clusive. However, that case is vehemently criticised.
In handling it without gloves, counsel enter against it
(quoting) "a respectful but earnest and solemn protest,
and proclaim it as being a declaration in direct and
positive violation of the rulings made and principles
laid down by every court of last resort in this country,
where such proposition was presented and determined."
As construed by counsel, its doctrines are character-
ized as "shocking," and, again, as "paralyzing." We
are cited to many cases, which, it is argued, run counter
to it. But a close gloss shows most of those cases
deal with the generality that an ordinance so in con-
flict with a State law as to be inconsistent with it
must give way. We have no bone to pick with that
generalization. It is the doctrine of this court. In so
far as any cases in other appellate courts hold contrary
to the Klausmeier case they may instruct and per-
suade, but not control. We shall not reopen the ques-
tion, but announce ourselves content with the doctrine
of the Klausmeier case. *Stare decisis.*

On this view of it, we reserve the other contentions of the city, viz., that the State statute is not really a law regulative of milk standards since it does not measure up to the definition of a "law;" is a "mere collection of words" (State ex inf. Crow v. Railway, 146 Mo. l. c. 168); and has no "penal sanction"—that is, provides no punishment [Bish. Stat. Crimes, (3 Ed.), sec. 22; 1 Bish. Crim. L. (8 Ed.), sec. 6.]

Our conclusion is that defendant's point is without substance and should be held against him. We so hold.

II. Is the ordinance void because against the "policy of the State" as evidenced by section 639, Revised Statutes 1909?

This question, logically, is the same discussed in the first paragraph under another name. In no just sense does the ordinance impinge upon the policy of the State as was the case in St. Louis v. Meyer, 185 Mo. l. c. 593, *et seq.* The State's policy (its milk standard) is left intact, to be enforced, if possible, by the State. The city only elects in its own behalf to use part of the power it has under its grant of power. It might have passed an ordinance as broad as the statute but on the other hand it might stop short of that, as it did. Furthermore, it is the policy of the State as evidenced by its statutes and Constitution (as they, in turn, are construed by the courts) to permit St. Louis to exercise its municipal discretion in passing ordinances differing in terms and limits from State statutes, so long as those limits are not broader than and in conflict with statutory provisions. We have already ruled, in paragraph one of this opinion, so much as that. That ruling disposes of the proposition in hand.

III. Is the ordinance void because it discriminates against non-residents and in favor of residents of St. Louis?

We are not quite sure we grasp the force of defendant's position. One phase seems to be that the ordi-

nance discriminates in favor of residents of the city who deal in milk and against non-residents who produce milk for sale in the city. But the ordinance says nothing about that. Its primary object was the welfare of the milk user, not the milkman. To that end it requires all milk to come up to a standard, no matter where produced. So that neither resident or non-resident milk producers come within its purview *qua* residents or *qua* non-residents. It deals with any one having in his possession impoverished milk in the city of St. Louis with intent to sell the same for use.

From other phases of the argument, we conclude the real objection to the ordinance, in counsel's mind, is that all people, countrymen, dwellers in villages or inhabitants of cities, are entitled to wholesome milk; that the people in St. Louis have the same right to such milk as the people outside of St. Louis. In that view of it, the proposition we are discussing is stated wrong end to by counsel. They get the cart before the horse. The question should be put this way: Does the ordinance discriminate against the inhabitants of St. Louis and in favor of the rest of the State?

Mark. The proposition defendant asserts is that the people elsewhere get milk of 8.75 per cent of non-fatty solids, while the people of St. Louis get milk of only 8.5 per cent non-fatty solids.

It may be a little afield, but we take space and time to remark in passing, that ordinarily penal laws are criticised by a defendant, when haled into court, because they are oppressive and unfair to him. The shoe pinches him. His opinion of the law takes color from that fact. It is rare in this court that a defendant, moved thereto as if yearning for the welfare of his victim, denounces the law because it is too light in punishment and too easy in its terms. But we shall not hold this defendant has not the constitutional right to stand upon such altruistic and ideal platform. He

has the right to defend milk, and insist on its being good.

We think there is no substance in the suggestion, as applied to this ordinance. The State law is not emasculated by it. If the State authorities enforce or can enforce the State law its blessings descend on the heads of all men in and out of the city. So, the ordinance could not regulate the milk standard for dwellers in other cities or in the country. It is common knowledge that the countryman does not depend on the milkman for his table or potable milk. Doubtless, other towns may protect themselves by such domestic municipal regulations as are suitable to their wants.

In this connection counsel invoke St. Louis v. King, 226 Mo. 334, in support of the proposition that it is as necessary that milk be nutritious in a city in per cent of non-fatty solids, as it is to people outside the city. The King case related to obscene advertisements. It was ruled that the city of St. Louis held no charter grant of power to pass the ordinance questioned in that case. What was said, *arguendo*, went to that proposition. Judicial utterances must be construed with reference to the propositions submitted for decision, and the facts held in judgment in the particular case.

In this case there is no question but what St. Louis has the power to regulate the sale of milk by prescribing a standard. Its charter grants such power and the policy of the State allows its exercise. [St. Louis v. Leissing, 190 Mo. l. c. 480.] In the exercise of that power, so long as it does not impinge upon the State law, it may prescribe regulations suited to its own congested population. That is what it did in this instance.

We rule the point against defendant.

IV. Again, the ordinance is said to be void because passed without regard to the wholesomeness or adulteration of milk. That contention, we take it, means that the city has no power to regulate milk other-

wise than to prevent the sale of adulterated or diseased milk—in other words, has no power to prescribe a scientific standard, indicative of the nutritive contents of milk. Such is not the law. The city may prescribe such standard, and milk that does not come up to it, whether through fault of cow or dealer, may not be dealt in. [St. Louis v. Reuter, 190 Mo. 514; St. Louis v. Grafeman Dairy Co., 190 Mo. 507; and see City of St. Louis v. Leissing, 190 Mo. 464, where there is an elaborate and exhaustive discussion of the matter.]

This point also is ruled against defendant.

V. Finally, it is said the ordinance is void because "repealed" by the Act of 1909, pp. 116-7. [Sec. 639, R. S. 1909.]

We dismiss the proposition with these remarks: There was no express repeal. There could be none by implication except there is a conflict. No conflict is pointed out, and in paragraph three of the Ameln case (reported at page 684 of this Report) we held none existed.

Accordingly we rule the point against defendant.

This ruling disposes of the case. The premises all considered, the judgment is affirmed. All concur, except *Valliant, C. J.*