STATE of Missouri, Respondent,

v.

Benjamin BENNETT, Appellant.

No. 55983.

Supreme Court of Missouri,
Division No. 2.

June 14, 1971.

John C. Danforth, Atty. Gen., Harold L. Lowenstein, Asst. Atty. Gen., Kansas City, for respondent.

Robert E. Meacham, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; John J. Cosgrove, Public Defender, Larry O. Denny, Public Defender, of counsel.

PRITCHARD, Commissioner.

A jury found appellant guilty of assault with intent to maim and assessed his punishment at six months imprisonment in the County jail. On this appeal three points are asserted. The first is that the state failed to prove the charge alleged in the information; the second is that the court erred in admitting into evidence State's Exhibit 1, a broken glass found in the immediate area of the alleged assault; and the third is that appellant's motion to dismiss should have been sustained because his arrest was unlawful and therefore he had a lawful right to use reasonable force to prevent the arrest.

On June 18, 1970, about 4:20 a. m., Patrolman Terry Barnes, the alleged victim of the assault, responded to a disturbance call at 808 East 40th Street in Kansas City, Missouri. Upon arrival he got out of his car and started up to the house to see if a woman, who was on the inside crying, was injured. Appellant was then standing on the sidewalk in front of, and about 35 to 45 feet from, the house. Appellant began yelling that the officers were going to have to shoot him if they were going to take him to jail, using foul language, and

at the same time walking westbound in front of the residence. Barnes came down the terrace and started after appellant and ordered him to stop. As Barnes got closer appellant struck him with an object on the right cheek about an inch below the eye. "It was localized. It was locally centered and it was a sharp impact. It didn't feel to be the type of impact that one would get when struck with a fist." Barnes was dazed for a moment but got his senses back together and he and Officer Daniels subdued appellant, and it took about four or five officers, after others arrived, to handcuff him. Barnes, knowing he was cut and bleeding, remained with appellant while other officers went to ascertain the nature of the disturbance in the house. Later Barnes was treated for his wound, receiving five double stitches to the area. The wound was cleaned, and there were foreign particles in it. Thereafter he was off duty for four days.

On cross-examination, Barnes testified he was six feet five inches tall and weighed 220 pounds, and appellant was about five feet eight inches to five feet ten inches tall and weighed 160 to 170 pounds. Appellant was 18 or 19 years of age. When Barnes first saw appellant he was cursing and walking away from him and Daniels. Barnes did not have a warrant for appellant's arrest, and had started to touch him on the shoulder. When they first arrived the officers did not have knowledge that appellant was involved in the disturbance. Barnes told appellant to stop, which he did and then whirled and hit Barnes. Prior to that time appellant was not told he was under arrest. Barnes never saw any object in appellant's hand.

Officer Daniels saw appellant turn and strike Barnes in the face with his right hand. He found State's Exhibit 1, a broken drinking glass, at the scene of and immediately after the scuffle when he was looking for his flashlight. At the trial the glass appeared to have dried blood on it. At the time Daniels found the glass the blood stain on it was fresh, still wet. Barnes, who was the only person bleeding, was then suffering from a deep laceration just below his right eye. He did not see the glass in anyone's hand. The glass was never processed for fingerprints, nor was the blood sample ever processed. At the time Barnes was first talking to appellant he did not have anything in his hands.

In arguing the sufficiency of the state's case appellant says there was no evidence that State's Exhibit 1 or any other piece of broken glass was ever in his hand, or that Barnes was struck with such glass. He says that there was affirmative evidence that he did not have Exhibit 1 in his hand when he struck Officer Barnes, "and that he could not have had said article in his hands at said time." The latter contention is without merit because Daniels testified that at the time he *first* talked to appellant he did not have anything in his hand. He did not testify that at the time appellant struck Barnes he did not have anything in his hand.

Appellant says further that the state's contention is that Exhibit 1 is the object with which he struck Barnes, but that the evidence affirmatively shows that Barnes was not struck by this glass. He argues that a "blow from its jagged edge would have lacerated his face in numerous places, caused profuse bleeding, and probably would have gouged out his eye." State's Exhibit 1 is before this court. The long jagged edge, which still has on it what was described by Daniels as dried blood, is almost opposite the next shorter (about ¼ inch) jagged edge. It is not inconceivable that the larger edge could have inflicted the laceration if the glass were held by the assailant by its bottom, without the shorter edge inflicting a wound. It is of no consequence on the issue of the sufficiency of the state's case that Daniels later found the glass when looking for his flashlight, and even though it might not have been in his mind that Barnes had been struck by a broken glass. Nor is it of any consequence that the so-called blood was not processed. Appellant did not object to Daniels' testi-

mony that the stain was blood on the ground that such was a conclusion. From the evidence, the state made a submissible case. Appellant struck Barnes with a blow described by him as a sharp, localized impact—not the same as by a fist. He immediately bled. Then a short time later Daniels found the glass with blood on it at the scene of the assault. The reasonable inference, for the jury to draw, from all the facts was that appellant used the glass as a dangerous weapon with intent to inflict bodily injury. Cases such as State v. Irby, Mo., 423 S.W.2d 800; State v. Woods, Mo., 434 S.W.2d 465; and State v. Missey, Mo., 234 S.W.2d 777, holding that the facts proven in a circumstantial evidence case must form a complete chain and that it is not incumbent on a defendant to break the chain, are in accord with the facts proven here.

■ As to the admissibility of State's Exhibit 1, appellant says that the broken glass was not connected with either the appellant or the offense charged. He says it had no relevancy, materiality or probative value and served only to inflame and prejudice the jury. The matter is ruled by State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, 339 [8, 9] quoting 16 C.J. § 1225, p. 619: " 'To warrant the admission in evidence of an instrument or weapon as the one with which the crime was committed, a prima facie showing of identity and connection with the crime is necessary and sufficient; clear, certain, and positive proof is not required. * * * A weapon with which the crime might have been committed, taken in connection with evidence of its finding near the time and scene of the crime, is a relevant evidentiary fact tending to show the means by which the crime was committed; and in such a case it is not necessary to connect the weapon with accused in order to render it admissible in evidence.' " In State v. Merritt, Mo., 460 S.W.2d 591, cited by appellant, there was no evidence that Merritt had a gun or shot one, and consequently there was nothing to connect a gun

found near the scene the next day. Thus it is to be distinguished, because here there was evidence that appellant struck Barnes causing a laceration and bleeding, and the glass with blood on it was found immediately afterward.

■ Appellant was not unlawfully arrested so as to give him grounds to resist the arrest under Kansas City v. Mathis, Mo. App., 409 S.W.2d 280, 289 [18]. What happened was that Officer Daniels initially questioned appellant without incident. It was thereafter that appellant used offensive, abusive and insulting behavior in the presence of the officers. Under § 84.710, RSMo 1969, V.A.M.S., police officers of Kansas City are officers of the state of Missouri, and "2. They shall have power within the city or on public property of the city beyond the corporate limits thereof to arrest, on view, any person they see violating or whom they have reason to suspect of having violated any law of the state or ordinance of the city. * * *." Under § 39.120(1) [Ord. 24846, 9–30–60] of the Revised Ordinances of Kansas City it is disorderly conduct if one "Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior." Appellant was clearly violating this ordinance at the time of his actual arrest and detention. Compare State v. Jacks, Mo., 462 S.W.2d 744, 747.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alt. J., concur.

FINCH, J., not sitting.