**KANSAS CITY, Missouri, Respondent,**

v.

**Marcia K. LaROSE, Appellant.**

**No. 58599.**

Supreme Court of Missouri,

En Banc.

June 17, 1975.

Aaron A. Wilson, City Atty., Louis W. Benecke, Asst. City Atty., by Walter J. O'Toole, Jr., Asst. City Atty., Kansas City, for respondent.

Morgan & Wall, William B. Morgan, Roger Wall, Independence, for appellant.

HOLMAN, Judge.

Appellant (hereinafter referred to as defendant) was convicted in police court upon charges of (1) disorderly conduct and (2) hindering and interfering with a police officer in the discharge of his official duties. She appealed and upon trial de novo the circuit judge sustained a motion to dismiss the disorderly conduct charge at the close of the city's case and a jury found defendant guilty of the other charge and a fine of fifty dollars was assessed. Defendant appealed to the Court of Appeals, Kansas City

District and that court adopted an opinion reversing the conviction because it concluded that the ordinance involved was in conflict with the state statute on the same subject and hence was void. The appeals court, however, transferred the case here for the reason that it considered its decision to be in conflict with certain cases decided by the St. Louis District of the Court of Appeals. We decide the case here the same as on original appeal. We affirm.

The following is a sufficient statement of the evidence. Patrolman Gerald Oliver, of the Kansas City Police Department, testified that at about 11 p. m. on January 20, 1972, he and Officer Moss were parked in separate cars in front of a mattress company at 3201 Gillham Plaza; that an individual reported to them that he had seen a prowler in the alley behind the building; that he drove through the alley behind the building to see if there was any appearance of a law violation; that when he saw no signs of the building having been entered he proceeded to check a party he had seen walking away from that area; that he found that person in front of the defendant's residence at 3258 Gillham Road; that as he drove toward the subject in order to question him, the person (later identified as James Carrillo, a son of the defendant) turned and yelled to him as follows: "F——— you cops, you Mother F———ing pig."

Officer Oliver further testified that he informed James that he was under arrest for disorderly conduct and then radioed to Officer Moss to come and assist him. As he got out of the car he told James to stop, but instead the youth ran into the house; that Officer Casselman was the first to respond to his radio message and the two of them went onto the front porch and found the defendant standing on the inside of the locked front door of the residence; that they told her that they had arrested the young man and desired entry in order to take him into custody; that she refused to let them in, saying that they needed a war-rant. The front door was constructed with approximately 6 inches of wood frame, with all of the remainder being glass; that they talked with the defendant for at least 5 minutes and were unable to gain entry and were reluctant to break the glass for fear of injuring defendant; that they could see three boys in the living room and saw that two of them had armed themselves with knives and one with a catsup bottle; that they could hear the boys saying "Come in, you pigs, we'll get you."

The officer further testified that by this time several other officers had arrived and he and Officer Liss went around to the back door to try to gain entry but found it locked; that they then heard a noise from the front of the house indicating that the door was being forced open and they then forced their way into the house; that one of the boys lunged at Officer Casey with a knife and another struck Officer Casselman in the mouth with his fist; that the boys were taken into custody and removed to the front sidewalk awaiting arrival of the paddy wagon to take them to the station; that during all of this time, the defendant was screaming and yelling and from time to time using obscene language. A crowd of twenty or twenty-five people gathered outside before the defendant and the boys were taken away.

Several other officers testified and corroborated the testimony of Officer Oliver. One officer testified that defendant called them "M——— F———ing Pigs" and another officer stated that defendant said "You are a bunch of bastards."

The three boys (ranging in age from 13 to 16), two neighbors and defendant testified on the defendant's case. It was conceded that James had used the obscenities attributed to him but he and his mother stated that at the time he was on the front porch. Much of the other testimony adduced by the city was denied by defendant's witnesses. They all denied that the boys had knives or a bottle or that any of them

sought to attack the police with knives or struck any officer with their fists.

The first point briefed by defendant is that the court erred in failing to sustain her motions for judgment of acquittal because the complaint was insufficient in that it failed to allege the "essential facts and specific conduct of defendant claimed to be in violation of the ordinance."

The information alleged "That on or about 1–20–72 at 3258 Gillham at about (time) 23:30 defendant did unlawfully within the aforesaid city, county and state commit the following offense: Hinder and interfere with a K.C.Mo. Police Officer who was in the discharge of his official duties by attempting to prevent a party from being arrested by that officer, in violation of Section 26.35 Revised Ordinances of Kansas City, Missouri." The relevant portion of the ordinance is as follows: "Section 26.35. Obstructing and Resisting City Officer.

"(a) Any person who shall in any way or manner hinder, obstruct, molest, resist or otherwise interfere with any city officer or inspector or any member of the police force in the discharge of his official duties shall be guilty of a misdemeanor."

■ We rule that the information was sufficient. Rule 37.18, V.A.M.R., provides that an information in municipal courts shall be a definite written statement of the essential facts constituting the offense charged. This court has held that in this type of case the same strictness is not required as in a criminal prosecution and that a complaint is ordinarily sufficient if it describes the act complained of in the language of the ordinance. City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450 (1949); City of St. Joseph v. Blakley, 486 S.W.2d 511[5] (Mo.App.1972). In the instant case the charge substantially follows the words of the ordinance. It would have been more complete if it had named the officer involved and the person he sought to arrest. If defendant, however, had desired more detailed information she should have filed a motion seeking a bill of particulars or a more definite statement. We have said that "When a defendant does not request a bill of particulars or otherwise attack the sufficiency of an information prior to judgment, he waives any claim he may have had for a more definite and certain statement of the offense or cause of action alleged." Kansas City v. Stricklin, 428 S.W.2d 721, 726 (Mo.1968).

The cases cited by defendant are all distinguishable. It is interesting to note, however, that in one of them the court held a complaint sufficient that alleged "careless and heedless driving—by failing to yield right-of-way." See City of Independence v. Peterson, 437 S.W.2d 168 (Mo.App.1969). It appears to us that the instant charge is more complete than the quoted one. As indicated, we rule this point against defendant.

Defendant's next point is that the court erred in failing to sustain her motions for judgment of acquittal because "The ordinance was void in that it contained no requirement of a mental element and was thereby in conflict with the state law on the offense of hindering and obstructing and a denial of defendant's right to due process of law . . . ." The basis of this claim is that Section 557.210, RSMo 1969, V.A.M.S. which proscribes resistance to officers in the service of process and in the discharge of certain other duties contains a requirement that such be "knowingly and willfully" done. The ordinance, supra, does not contain those words.

■ It is, of course, well settled that a municipal ordinance must be in harmony with a general law of the state upon the same subject and is void if in conflict therewith. See Section 71.010, V.A.M.S. There is, however, a great conflict of authority in the determination of the specific situations which come within that rule.

■ At the outset of our consideration of this contention there are certain well estab-

lished rules or principles which should be stated. Where its language will permit an ordinance should be construed so as to uphold its validity as against a construction which would invalidate it. Zinn v. City of Steelville, 351 Mo. 413, 173 S.W.2d 398[10] (1943). In 62 C.J.S. Municipal Corporations § 143, p. 294 the rule is stated as follows: "Ut res magis valeat quam pereat [that the thing may rather have effect than be destroyed] is uniformly applied by the courts to sustain, as being consistent with the general laws and constitution, wholesome by-laws enacted to suppress disorderly conduct, provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of the municipality."

█ It is, of course, elementary that cities in enacting ordinances need not follow the exact words of a statute upon the same subject in order to avoid invalidity by reason of conflict. The cases hereinafter discussed demonstrate that many variances are permissible.

For convenience of discussion the ordinance and statute are set out as follows:

### THE STATUTE

Section 557.210 (emphasis ours)

If any person or persons shall knowingly and willfully obstruct, resist or oppose any sheriff or any other ministerial officer in the *service or execution*, or in the attempt to serve or execute any *writ, warrant or process*, original or judicial, or in the discharge of any other duty *in any case*, civil or criminal, other than felony, or in the service or attempt to serve *any order or rule of court in any case*, every person so offending shall, on conviction, be adjudged guilty of a misdemeanor.

### THE ORDINANCE

Section 26.35

(a) Any person who shall in any way or manner hinder, obstruct, molest, resist or otherwise interfere with any city officer or inspector or any member of the police force in the discharge of his official duties shall be guilty of a misdemeanor.

█ It is apparent that the statute and ordinance were not designed to precisely cover the same area. Obviously, the statute was primarily enacted in order to proscribe obstruction in the service or execution of various types of process. We will assume, however, that the provision "in the discharge of any other duty in any case" would include an arrest of the type here involved. The ordinance, on the other hand, is very general in its application. It applies to any interference with any city officer as well as members of the police force in the discharge of any official duty.

While, as stated, the statute requires that the act be knowingly and willfully done and the ordinance does not contain those words, we have concluded that no conflict exists which would invalidate the ordinance. It is clear that any violation of the statute would also be a violation of the ordinance. In that regard they are entirely consistent. The ordinance has simply gone further and prohibited interference in cases where willfullness is not shown.

" . . . [W]here both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective." 56 Am. Jur.2d, Sec. 374, p. 409. Cases cited as supporting the stated rule include City of Baltimore v. Sitnick, 254 Md. 303, 255 A.2d 376 (1969) where an ordinance was held valid which established a higher minimum

wage than the state law. Taggart v. Latah County, 78 Idaho 99, 298 P.2d 979 (1956) which held an ordinance valid that prohibited the sale of beer during hours in which the sale would have been permissible under a state statute, and Phelps, Inc. v. City of Hastings, 152 Neb. 651, 42 N.W.2d 300 (1950) which also held that an ordinance imposing stricter liquor regulations than the state statute was not inconsistent with the act. See, also, City of Charleston v. Jenkins, 243 S.C. 205, 133 S.E.2d 242 (1963).

In Vest v. Kansas City, 355 Mo. 1, 194 S.W.2d 38 (1946) this court held that an ordinance which made stricter requirements than the state law in regulating the barber trade was not invalid because of conflict. The court in City of St. Louis v. De Lassus, 205 Mo. 578, 104 S.W. 12 (1907) held an ordinance valid which forebade keeping meat markets open after 9 a. m. on Sunday whereas the state law made it unlawful to sell merchandise at any time on Sunday. To like effect is City of St. Louis v. Scheer, 235 Mo. 721, 139 S.W. 434 (1911) which held an ordinance that required milk to contain 8.5 per cent solids not to be invalid because of conflict by reason of the state law requiring 8.75 per cent solids.

Considering cases specifically in point we find three "disturbing the peace" cases which squarely support the conclusion we have reached. In Mayor, etc., of City of Glasgow v. Bazan, 96 Mo.App. 412, 70 S.W. 257 (1902) the ordinance prohibited disturbing the peace by loud noise, etc., while the state statute used the word *willful* in proscribing a peace disturbance. The court in ruling that the ordinance was not void by reason of conflict discussed the conflict statute (now section 71.010) and stated that: "The section was only intended to keep city ordinances in harmony with the state law on the same subject, and thus avoid confusion, and, perhaps, conflict, in the administration of that part of the law. In this case we consider the ordinance aforesaid to be in harmony with the statute.

They each, in a general way, cover the same subject, and have the same object. There is no conflict between the two laws, and certainly the ordinance is not out of harmony with the statute." 70 S.W. 258. Precisely the same question was ruled in the same manner in City of St. Louis v. Page, 259 S.W.2d 98[2] (Mo.App.1953) and City of St. Louis v. Goldman, 467 S.W.2d 99[4] (Mo. App.1971).

Our view is also supported by the case of City of Linneus v. Dusky, 19 Mo.App. 20, wherein an ordinance prohibiting carrying concealed weapons was held valid and not in conflict with a similar state statute although the statute provided that it would be a defense to show that it was necessary for the defendant to carry the weapon for self defense and the ordinance contained no such provision. We also think it is significant that a respected text writer, although acknowledging contrary authority, has concluded that "The fact that state law penalizes only willful violations and that local law does not require proof of willfulness does not make the local inconsistent with the state law." Vol. 6 McQuillin, Municipal Corporations, 3rd Ed. Sec. 23.07, p. 423.

Defendant primarily relies upon the case of City of Cape Girardeau v. Pankey, 224 S.W.2d 588 (Mo.App.1949) in which the ordinance simply provided that "It shall be unlawful for any person to trespass upon private property, etc." whereas the state statute provided that " 'Every person who shall willfully and maliciously, or wantonly and without right, enter the premises of another, and cut, take away, destroy, injure or mutilate any fruit tree, ornamental or shade tree, shrub or vine,' etc.," p. 589. In ruling the ordinance void the court stated that "It is the established policy of our State that in order to constitute actionable trespass the act must not only be willfully or maliciously done, but it must result in injury, or at least threatened injury, to the person or property of another. This ordinance is not in harmony with such policy."

p. 589. We think this case is distinguishable from the cases cited above and from the instant case. The decision was based upon an established state policy which not only required willfulness but malice and injury. There is no applicable state policy in the situation before us. This is indicated by statutes similar to Section 557.210 (contained in the same chapter) which do not require willfulness, i. e., Sections 557.230, 557.240, 557.250, 557.260, 557.270, 557.280, 557.300, 557.310, 557.320 and 557.330. The last cited section which prohibits the aiding of a prisoner in escaping from an officer comes close to being applicable to the facts in this case and, as stated, it requires no intent.

As indicated, we rule this point against the contention of defendant.

Defendant also claims that the court erred in failing to sustain her motions for judgment of acquittal because (1) the officer was not in the performance of a lawful duty since he could not have been attempting to make an arrest for a crime committed in his presence because no crime had been committed and (2) there was not sufficient evidence to show any affirmative act of interference by defendant who was entitled to refuse to assist officers wanting admission to her house without a warrant.

 We doubt the necessity of making a technical determination that James had committed an offense since it appears that Officer Oliver could reasonably have concluded that he was guilty of disorderly conduct. Moreover, it was held in a recent case that a defendant did not have a right to interfere with an officer making an arrest even if the arrest was illegal. See City of St. Louis v. Treece, 502 S.W.2d 432[1] (Mo.App.1973). It appears, however, that under the decision in State v. Bennett, 468 S.W.2d 23, 25 (Mo.1971) James had committed an offense and was lawfully arrested. Therein it is said that "Appellant was not unlawfully arrested . . . What happened was that Officer Daniels initially questioned Appellant without incident. It was thereafter that appellant used offensive, abusive and insulting behavior in the presence of the officers. . . . Under § 39.120(1) [Ord. 24846, 9–30–60] of the Revised Ordinances of Kansas City it is disorderly conduct if one 'Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior.' Appellant was clearly violating this ordinance at the time of his actual arrest and detention."

 Defendant says that the officers had no right to enter her house without a warrant and therefore she was within her rights in refusing to admit them. We do not agree. "It is well settled that a police officer . . . may make a peaceable or forcible entry to search any premises without a search warrant, for the purpose of arresting one accused of felony, or guilty of a breach of the peace or misdemeanor committed in his presence. . . . Where a prisoner under civil or criminal arrest escapes from the custody of the officer or person making the arrest, such officer or person may, on fresh pursuit, make a search without a warrant, of any premises in which he has reasonable ground to believe the prisoner is hiding, and for that purpose may, after due demand for admission and refusal, force an entry to the building or premises to be searched." Anno. 5 A.L.R. 263, 273. We rule that the officers had a right to enter defendant's home under the circumstances presented.

 It is also defendant's contention that she was not guilty because she merely refused to assist the officers and did not affirmatively resist them. Again, we do not agree. According to defendant's own testimony she was on the porch when James shouted the obscenity and that they then entered the house. It is reasonable to conclude that one of them locked the door very shortly before the officers sought to enter. Since we have ruled that the officers had a right to enter it is our view that defendant's actions in standing in the doorway and

refusing to unlock the door and permit them to enter upon their reasonable request constituted conduct which hindered and interfered with the discharge of the duty of the officers to take James into custody.

It is also suggested that defendant was not guilty because she had no actual knowledge that she had a duty to admit the officers. "It is a rule which is deep in our law, that ignorance of the law or mistake of law is no excuse, furnishes no exemption from criminal responsibility, and is ordinarily no defense to a criminal prosecution, since, as stated infra § 586, everyone is presumed to know the law of the land, both common and statutory." 22 C.J.S. Criminal Law § 48, p. 183.

We rule this point contrary to defendant's contentions.

The next point briefed is that the court erred in admitting in evidence the two knives taken from defendant's sons. These knives were offered in connection with the testimony that the two boys had armed themselves with knives. An objection that the exhibits were irrelevant was made and overruled. We rule, that under the circumstances here shown, the knives were admissible because the acts, statements and conduct of the three boys were admissible as being so closely connected with the two offenses with which defendant was charged as to constitute a part of the res gestae. See, State v. Cruts, 288 Mo. 107, 231 S.W. 602[3] (1921), State v. Lorton, 274 S.W. 383 (Mo.1925) and State v. Terry, 472 S.W.2d 426[7] (Mo.1971). Moreover, even if we should assume that they were not admissible, their admission would not have been prejudicial because there was other testimony, admitted without objection, that the boys were armed with knives. Harris v. Goggins, 374 S.W.2d 6[11] (Mo. 1963); Billings v. State, 503 S.W.2d 57[5] (Mo.App.1973).

During the examination of Officer Moss a question was asked concerning his response to the call for assistance from Officer Oliver. Thereafter the following occurred:

"A. He told me to come back to Gillham, I am having trouble.

"Q. Is that standard police procedure?

"A. Yes, when you are having trouble.

"Q. Why?

"A. That time when Mullick (phonetic) got shot at Armour and Virginia; that is what he put out.

"MR. MORGAN: Your Honor, I object, in—

"THE COURT: Sustained.

"MR. MORGAN: I object and ask that the jury be discharged on grounds of prejudicial—

"THE COURT: Overruled."

Defendant contends that the statement referring to the shooting of a policeman was prejudicial to her and that the court erred in failing to sustain her motion for a mistrial. In that connection it should be noted that the court promptly sustained the objection and that defendant did not seek other relief short of a mistrial such as a motion to strike and an admonition to the jury to disregard the statement. This court has often said that " 'the declaration of a mistrial is, as stated, a drastic remedy and should be exercised only in extraordinary circumstances where the prejudicial effect can be removed in no other way. See State v. Smith, Mo., 431 S.W.2d 74; State v. James, Mo., 347 S.W.2d 211; State v. Camper, Mo., 391 S.W.2d 926. This determination rests largely within the discretion of the trial judge who observed the incident and can best gauge its prejudicial effect upon the jury.' " State v. Pruitt, 479 S.W.2d 785, 790 (Mo.1972). We see nothing to indicate an abuse of discretion in this instance and the point is accordingly overruled.

As heretofore stated the trial court sustained a motion to dismiss the disorderly conduct charge at the close of the city's

case. As her final point defendant contends that "The court erred in failing to grant defendant a new trial upon the ground that, after the charge of disorderly conduct was dismissed, so much inflammatory evidence had been received which was irrelevant to the specific charge remaining against defendant, that she could not have had a fair trial on such remaining charge." In connection with our consideration of this contention it should be noted that much, if not all, of the evidence referred to would have been admissible on the hindering charge as a part of the res gestae. Moreover, we think that the defendant has not preserved this contention for appellate review. To have done so her counsel should have moved for a mistrial immediately after the court dismissed the disorderly conduct charge. He also could have moved the court to direct the jury to disregard any evidence he considered irrelevant to the hindering charge. It is our view that defendant could not go ahead and complete the trial in the hope of obtaining an acquittal and then, for the first time, make the contention in the motion for new trial that she could not have a fair trial on the hindering charge because of evidence admitted on the charge that had been dismissed. This point is disallowed.

Judgment affirmed.

DONNELLY, C. J., and MORGAN, HENLEY, and FINCH, JJ., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

BARDGETT, J., concurs in result and concurs in separate concurring opinion of SEILER, J.

SEILER, Judge (concurring in result).

I believe it is implicit in the Kansas City ordinance that the hindering, obstruction, etc. of the officer be done wilfully and knowingly. Thus there is no conflict between the statute and the ordinance. I do not believe that a person would be guilty of violating the Kansas City ordinance and subject to fine or imprisonment if the person were unwittingly or perhaps carelessly to hinder or obstruct an officer in the discharge of his official duty, by, for example, accidentally or negligently getting in his way. A person might be driving through an intersection on a green light and fail to yield the right of way to a police vehicle chasing a suspect, thereby resulting in a collision with the police vehicle and the escape of the suspect. I doubt if this would constitute a violation of the ordinance, although it would under its literal terms. The other statutes referred to in the majority opinion—Secs. 557.230–280 and Secs. 557.300–330, RSMo 1969—dealing with rescuing or helping prisoners to escape, do not in terms require criminal intent, but I doubt if we would sustain convictions under them in the absence of criminal intent.

In State v. McLarty, 414 S.W.2d 315 (Mo. 1967), we had for consideration the words of the statute against tampering with an automobile, Sec. 560.175(1), RSMo 1969, which provides: "No person shall drive, operate, use or tamper with a motor vehicle without the permission of the owner thereof." The statute says nothing about criminal intent, knowledge, or wilfulness. Yet we held that criminal intent was an essential element of the offense proscribed, even though punishment therefor could be as little as a $1 fine or a day in jail. See also Davis v. State, 499 S.W.2d 445 (Mo.banc 1973) and State v. Tate, 436 S.W.2d 716 (Mo.1969). Similarly here I do not believe the Kansas City ordinance applies regardless of intent. Interfering with a police officer in the performance of his duty involves an aspect of moral turpitude or wrongdoing accompanied by guilty knowledge or intent. It is not the same as a parking or speed limit violation, where no criminal intent need be shown.

Under the evidence before us, there was evidence to support a finding of the required mental element and the trial court

did not err in overruling the motion for judgment of acquittal. That is to say, there was evidence that defendant knew the officers were police officers and that she intentionally interfered with their activity. Thereafter, in instructing the jury, the court did so in the language of the ordinance, without any requirement that the jury find that the defendant acted wilfully or intentionally. However, omitting the element of criminal intent in the main instruction in this misdemeanor case "was a matter of non-direction, and since the defendant failed to request an instruction on that subject the omission was not error." State v. Burgess, 456 S.W.2d 641, 643 (Mo. App.1970); State v. Goodman, 490 S.W.2d 665 (Mo.App.1972); Rule 26.02(6). I therefore concur in the result reached in the principal opinion.