# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3131

_____

Darryl L. Riddle

*Plaintiff - Appellant*

v.

Sergeant Timothy Riepe; Officer Richard Robinson, #4854; Officer John Doe;
Alvin Brooks, in his official and individual capacities; Michael Rader, in his
official and individual capacities; Angela Wasson-Hunt, in her official and
individual capacities

*Defendants - Appellees*

David Kenner, in his official and individual capacities

*Defendant*

Sylvester "Sly" James, in his official and individual capacities; Darryl Forte, in his
official and individual capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 6, 2017
Filed: August 9, 2017

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Darryl Riddle was arrested and charged with hindering, obstructing, resisting, or otherwise interfering with Kansas City police officers in violation of Kansas City Ordinance § 50-44(a).  Riddle brought suit against the officers who arrested and charged him, as well as against other Kansas City police officials, stating claims for, *inter alia*, malicious prosecution, fabrication of evidence, and conspiracy.  The district court[1] granted summary judgment in favor of the defendants, and Riddle appeals.  Finding no reversible error, we affirm.

## I. Background

The incident at issue occurred on October 12, 2013, and was captured in substantial part by the officers' dashboard video camera (dashcam).  That evening, Kansas City Police Officer Richard Robinson attempted to conduct a traffic stop of Riddle's cousin, Jereal McKinney.  Instead of immediately pulling over, McKinney drove to Riddle's house, parked in the driveway, and got out of his car.  Robinson approached McKinney on the passenger side of McKinney's vehicle and took him to the ground.  Seeing the police lights, Riddle, Riddle's aunt, and one or two other cousins exited the house.  Riddle stood about ten feet from Robinson and McKinney and watched as Robinson handcuffed McKinney, walked him to his patrol car, and questioned him.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Officer Kyle Oldham arrived in a separate police car, exited his vehicle, and approached the scene. Riddle testified that he did not see Oldham, but he felt someone touch his left pants pocket. Then, Riddle stepped back from Oldham, brought his hands out from behind his back, and said, "Stop touching me." Oldham replied, "I'm going to pat you down" or "I'm trying to pat you down," and reached again for Riddle's pocket. Oldham tried to grab Riddle's left arm, but Riddle pulled it away. Riddle stated, "I'm at home" or "This is my house," and pulled away from Oldham once more. Oldham explained, "You're out here, so I have to pat you down; make sure you have nothing on you." Riddle continued to step back from Oldham.

At that point, a third officer, Sergeant Timothy Riepe, rushed over to Oldham and Riddle and took Riddle to the ground. Riddle was handcuffed and left standing in front of Robinson's police car. Oldham, Robinson, and Riepe stepped outside of the view of the dashcam and discussed what occurred. Riddle testified that he heard parts of their conversation, including comments about the angle of the camera, taking Riddle to the ground, and arresting him. On the video, an officer can be heard asking, "Did that guy give you any shit?" Another officer responds, "He didn't give me any shit. I didn't see him behind me until Kyle started talking to him. I'd already gotten my guy cuffed up and had him back on the bumper." At that point, Robinson turned off the microphone and had a conversation with Riepe about the charges Robinson intended to file against Riddle.

That evening, Robinson drafted an incident report, which in part states:

> After I gained control of Arrest 1 [McKinney] and walked him to my patrol car Arrest 2 [Riddle] approached and took up a position within an arms reach of me. PO Oldham . . . arrived as back-up and he made contact with Arrest 2. During the contact PO Oldham advised him that he was going to frisk him, due to him refusing to leave and being in close proximity to me and Arrest 1. During the

-3-

attempted frisk Arrest 2 pulled away from him and stated
"I don't want you to touch me[.]" PO Oldham explained to
Arrest 2 the reason for the frisk and attempted to frisk him
again but he again pulled away. Sgt Ripe (sic) . . .
approached and used an armbar to take him to the ground.
Arrest 2 was handcuffed and arrested for hindering and
interfering.

Riddle was charged with violating Kansas City Ordinance § 50-44(a), which
in relevant part states: "Any person who shall in any way or manner hinder, obstruct,
molest, resist or otherwise interfere with any city public safety officer . . . , including,
but not limited to . . . any officer of the city police department . . . in the discharge of
his/her official duties shall be guilty of an ordinance violation." Robinson drafted a
General Ordinance Summons, which recites the facts supporting the charge as:

Obstruct or resist public safety officer, employee, or
inspector – Did hinder, obstruct, molest, resist or otherwise
interfere with Kansas City Public Safety Officer, employee
or inspector in the discharge of his official duties, to wit:
Approach and come in close proxicimity (sic) to arresting
officer and arrest failing to comply with verbal commands
of officer.

The charge against Riddle was not prosecuted and was eventually dismissed. On
October 28, 2014, Riddle filed this lawsuit.

Riddle's amended complaint stated eight claims for relief. Defendants moved
for summary judgment, and in response, Riddle abandoned five of his claims.
Riddle's remaining three claims were brought against Robinson and Riepe for
malicious prosecution under Missouri law, "fabrication of false justification for
arrest" under 42 U.S.C. § 1983, and conspiracy to fabricate under § 1983. The
district court granted summary judgment against Riddle on all claims, and Riddle
appeals.

-4-

## II. Discussion

We review de novo the district court's grant of summary judgment, "viewing all evidence and drawing all reasonable inferences in the light most favorable to" Riddle. Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

### A. Malicious Prosecution Claim

To survive summary judgment on his malicious prosecution claim under Missouri law, Riddle must show that the police officers lacked probable cause to arrest and prosecute him for a violation of Kansas City Ordinance § 50-44(a). See Kurtz v. City of Shrewsbury, 245 F.3d 753, 757–58 (8th Cir. 2001). The district court found that Riddle had conceded that probable cause existed when he abandoned his false arrest claim, which also has the lack of probable cause as an element. Riddle argues the district court erred. We agree that the district court should not have relied on an abandoned claim to find the probable cause element unsatisfied. However, we conclude that the claim was properly dismissed because Riddle has not shown that there is a genuine dispute of material fact as to the want of probable cause for his arrest and charge. See Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C., 690 S.W.2d 144, 151 (Mo. Ct. App. 1985) ("[T]he proof of all essential elements of malicious prosecution, including want of probable cause, must be strict and clear.").

Riddle was arrested pursuant to § 50-44(a), which in relevant part makes it a violation to "hinder, obstruct, molest, resist or otherwise interfere with any city public safety officer . . . in the discharge of his/her official duties." Kan. City Code § 50-44(a). Section 50-44 is a "[s]imilar provision[]" to Missouri Statute § 575.150, which

makes forms of resisting and interfering with arrests a misdemeanor. Kan. City Code § 50-44; see Mo. Rev. Stat. § 575.150.1. But Kansas City's ordinance is broader than the Missouri statute and covers a greater range of conduct. See Kansas City v. LaRose, 524 S.W.2d 112, 117 (Mo. banc 1975) (predecessor to § 55-44 "has simply gone further and prohibited interference" beyond that prohibited in the Missouri statute).

The undisputed facts demonstrate that Riddle stepped away from Oldham several times, pulled his arm away from Oldham, and prevented Oldham from conducting a pat-down search. Even under the narrower Missouri statute, such evidence provides an officer with probable cause to arrest a person for resisting his or her detention. See United States v. Collins, 200 F.3d 1196, 1198 (8th Cir. 2000) (an officer has probable cause to arrest under Missouri law, where defendant "reacted by jerking, and turning away from [the officer], jerking his arm free of [the officer's] grasp [][a]nd taking a couple of steps [away]" (alterations in original)).

Riddle appears to argue that even if there was probable cause to arrest him, the facts alleged in the Summons do not support probable cause for his prosecution. The facts stated in the Summons to support the charge are: "Approach and come in close proxicimity (sic) to arresting officer and arrest failing to comply with verbal commands of officer." Similar facts have been found sufficient to constitute a violation of § 50-44(a) and other ordinances like it. Cf. LaRose, 524 S.W.2d at 119–20 ("standing in the doorway and refusing to unlock the door" to permit officer to enter "constituted conduct which hindered and interfered with the discharge of the duty of the officers"); City of Sedalia v. Russell, 623 S.W.2d 609, 610–11 (Mo. Ct. App. 1981) (repeatedly "disobeying a lawful command of a police officer" constituted "a course of conduct which obstructed and was calculated to defeat [the] investigation"). Therefore, Riddle has not shown that the officers lacked probable cause to issue the violation based on the facts alleged in the charging document.

Finally, Riddle argues that the district court should not have dismissed his malicious prosecution claim because he produced evidence that the officers had a malicious motive. Even if Riddle produced evidence of malice, such evidence would be insufficient to survive summary judgment where, as here, Riddle has not demonstrated a lack of probable cause. See Zahorsky, 690 S.W.2d at 151 ("When probable cause exists, the issue of malice becomes irrelevant because even if malice is clearly shown, the action for malicious prosecution must fail."). Accordingly, summary judgment on the malicious prosecution claim was proper.

**B. Fabrication of Evidence Claim**

"[A] manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012). Riddle argues that his fabrication of evidence claim was improperly dismissed because the Summons falsely states that he came in close proximity to Robinson and failed to comply with the verbal commands of an officer.

Riddle has not raised a genuine issue of material fact regarding the falsity of the facts set forth in the Summons. Riddle testified that he was within ten feet of Robinson and McKinney; thus, he was standing in close proximity to Robinson. Moreover, the video of the incident reveals that Robinson ceased his questioning of McKinney once he became aware of the confrontation between Riddle and Oldham, providing undisputed evidence that Riddle interfered with and obstructed Robinson's questioning of McKinney. As to the failure to comply, Riddle appears to argue that Oldham never gave him a "command," but instead stated, "I'm going to pat you down" or "I'm trying to pat you down." Even if the Summons mistakenly described this language as a command, such negligence does not amount to fabrication of evidence. See Livers v. Schenck, 700 F.3d 340, 351 (8th Cir. 2012) ("Negligence and even gross negligence is not enough" to show that evidence was fabricated). Riddle

-7-

also argues that he did in fact comply, but the video refutes such a contention; it shows that Riddle continued to back up and pull away after Oldham explained his intention to pat him down.

Riddle points to the incident report as evidence of fabrication, arguing that Robinson, the author of the report, did not see or hear the events described therein. It is not improper, and certainly not evidence of fabrication, for an officer to rely on hearsay to establish the facts to support an arrest or charge. Cf. Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012) ("Although neither deputy witnessed this conduct, officials may rely on hearsay statements to determine that probable cause exists."). Riddle specifically challenges the truthfulness of the portion of the report that states, "[d]uring the contact PO Oldham advised [Riddle] that he was going to frisk him." He contends that this sentence makes it seem like Oldham stated his intention to pat him down before touching him, which Riddle disputes. Reading the report in the light most favorable to Riddle, any misleading impression that the report may leave as to the order of events demonstrates at most negligence on the part of Robinson, which is insufficient to sustain a fabrication of evidence claim. See Livers, 700 F.3d at 351.

Finally, Riddle argues that there is substantial evidence that the officers had the motive to falsely charge him in order to justify Riepe's use of force. As evidence of motive, Riddle points to the officers' conversation about the angle of the dashcam, Robinson turning off the microphone to discuss the incident and the charges, Robinson's statement that "He didn't give me any shit," and contradictory testimony in the officers' depositions about who was going to write up the charges and when the arrest decision was made. In combination with evidence of falsity, such facts, viewed in the light most favorable to Riddle, can be relevant to a fabrication of evidence claim. See, e.g., Winslow, 696 F.3d at 732–35; White v. Smith, 696 F.3d 740, 754–57 (8th Cir. 2012). But without any evidence of fabrication, evidence of motive is insufficient to survive summary judgment. See Livers, 700 F.3d at 354 ("[T]he

Fourteenth Amendment's guarantee of due process is violated by 'the manufacture of . . . false evidence' in order 'to falsely formulate a pretense of probable cause.'" (second alteration in original) (quoting Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002))).

## C. Conspiracy

Riddle's civil conspiracy claim is based on the same facts as those offered to support his fabrication of evidence claim. To prevail on a § 1983 conspiracy claim, a plaintiff is "required to prove a deprivation of a constitutional right or privilege." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). "Absent a constitutional violation, 'there is no actionable conspiracy claim.'" Slusarchuk v. Hoff, 346 F.3d 1178, 1183 (8th Cir. 2003) (quoting Cook v. Tadros, 312 F.3d 386, 388 (8th Cir. 2002)). Because Riddle's § 1983 fabrication of evidence claim was properly dismissed, the civil conspiracy claim based on the alleged fabrication must also fail. See Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 809 (8th Cir. 1999) (affirming dismissal of § 1983 conspiracy claim because the underlying constitutional claims had been properly dismissed).

## III. Conclusion

For the foregoing reasons, we affirm the judgment.

_____